STATE OF IOWA, Appellee, v. JOE WILLIAMS, Appellant.

CRIMINAL LAW: Included Offenses—Undue Leniency. An accused
1  may not complain that he was convicted of murder in the second degree when he might have been convicted of murder in the first degree.

APPEAL AND ERROR: Absence of Evidence on Appeal. An order
2  refusing a change of venue will not be reviewed on appeal, in the absence of the evidence on which the order was made.

CRIMINAL LAW: Change of Venue—Bias of Judge. Principle reaf-
3  firmed that prejudice of the trial judge is not made to appear simply from a showing that the judge has once presided over the trial of the charge, and has formed an opinion that the accused is guilty.

JURY: Competency—Qualified Opinion. Jurors are competent, notwithstanding the fact that they have formed an opinion, if the court is satisfied that they can and will lay aside their opinion and be governed by the testimony and the instructions of the court.

NEW TRIAL: Misconduct of County Attorney—Demanding Arrest of Witness. The request of the county attorney, in the presence of the jury, that the court order the arrest for perjury of a witness who has just testified, is not, in and of itself, reversible error. Especially is this true when the request for such arrest was a mere inference to be drawn from the remark of the attorney.

WITNESSES: Credibility—Details of Former Convictions. If a witness is uncertain as to the number of times he has been convicted of felonies not similar to that for which he is on trial, his attention may be called to the particular crimes and to the circumstances and places where he had been convicted.

CRIMINAL LAW: Evidence—Best and Secondary—Dissimilarity of Finger Prints. Testimony is properly rejected to the effect that a witness had examined photographs of finger prints in the clay at the scene of the crime, and photographs of finger prints of the accused, and that such finger prints were not the same, the said photographs not being produced or accounted for, except by testimony tending to show that they were in a public office, and presumptively readily obtainable.

WITNESSES: Impeachment—Minutes Before Grand Jury. Witnesses for an accused may, on the trial of the accused, be impeached by the minutes of their testimony taken before the grand jury subsequent to the finding of the grand jury.

INDICTMENT AND INFORMATION: Minutes of Testimony—Unused Minutes. An indicted accused is not entitled to a copy of the minutes of testimony taken before the grand jury, and used by the county attorney for the purpose of impeaching the defendant's witnesses, such minutes not being minutes upon which the indictment in question was found.

APPEAL AND ERROR: Presumptions—Involuntary Testimony. The appellate court will not presume that a defendant's testimony given on a preliminary hearing of another party accused of the same crime, and used on the trial of the defendant on the latter's cross-examination, was involuntary.

APPEAL AND ERROR: Presumptions—Scope of Instructions. One who, on appeal, predicates error on the failure to instruct as to certain subject-matters, must present a record showing affirmatively that the trial court did not adequately cover such matters in the instructions given.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

APRIL 1, 1924.

THE defendant was indicted for murder in the first degree, committed by the killing of Sara Barbara Thorsdale. Upon a trial, he was found guilty of murder in the second degree. From a judgment of imprisonment in the state penitentiary for life, he appeals.—*Affirmed.*

*Charles P. Howard* and *William E. Taylor,* for appellant.

*Ben J. Gibson,* Attorney-general, *Vernon R. Seeburger,* County Attorney, and *Russell Jordan,* Assistant County Attorney, for appellee.

VERMILION, J.—This is the second appeal in this case. The first opinion will be found in 195 Iowa 785, where the facts of the brutal and revolting crime with which the defendant is charged are fully set out. There is no occasion to again refer to them here in detail. It is only necessary to consider at this time the errors assigned as a ground for reversal.

Upon the last trial, the defendant was found guilty of murder in the second degree. It is urged that the defendant should have been found guilty of murder in the first degree,

1. CRIMINAL LAW: included offenses: undue leniency.

or acquitted. We heartily agree with the proposition, but it does not follow that his conviction of the included offense cannot stand. The evidence was, as to the principal facts, substantially the same as on the first trial, and as set out at length in the former opinion. It was amply sufficient to sustain a conviction of murder in the first degree. The defendant cannot complain if the jury dealt too leniently with him. *State v. Barkley,* 129 Iowa 484; *State v. Shepherd,* 129 Iowa 705; *State v. Haugh,* 156 Iowa 639; *State v. Dimmitt,* 184 Iowa 870.

Error is assigned on the overruling of defendant's motion for a change of venue. Two motions were presented: one asking a change of place of trial to another county, on the ground

2. APPEAL AND
ERROR: absence
of evidence on
appeal.

that the defendant could not obtain a fair trial in the county where the indictment was returned, on account of the prejudice of the people of the county against him, and the other asking a change of trial to another judge, on account of the bias and prejudice of the judge before whom the case was about to be tried.

As to the first motion, it is stipulated in this court that about 30 affidavits were filed in support of the motion, and about 31 in resistance. The affidavits, aside from that of the defendant, are not in the record. The granting of a change of venue rests in the sound discretion of the court, and, unless it is found that the discretion was improperly exercised or abused, its action will not be interfered with, even upon conflicting testimony. *State v. Foster,* 91 Iowa 164; *State v. Brown,* 130 Iowa 57; *State v. Hassan,* 149 Iowa 518; *State v. Icenbice,* 126 Iowa 16; *State v. Blodgett,* 143 Iowa 578. In the absence of the evidence passed upon by the court below in denying the motion, it is manifest that no error is shown.

The motion based upon the allegation of prejudice on the part of the trial judge did not entitle the defendant to the change, as a matter of right. The judge may consult his own

3. CRIMINAL LAW:
change of
venue: bias of
judge.

feelings, as well as the showing made, and grant or deny the change, as he may think the right demands, in the exercise of careful discretion. *State v. Foley,* 65 Iowa 51. It is the duty of the judge to grant or deny the change as the fact of prejudice appears to him, and this court will interfere only where he has abused the discretion vested in him. *State v. Billings,* 77 Iowa 417. Prejudice is not shown to exist on the part of the judge merely because he has formed an opinion of the guilt of the defendant, from having presided and heard the evidence at a former trial. The prejudice contemplated is not merely a belief as to the guilt or innocence of the defendant, but the presence of such a state of feeling as will incline the judge against the defendant in his rulings and instructions on the trial. *State v. La Grange,* 94 Iowa 60. The trial judge, in passing on the motion, said that he heard the case under an assignment made by another judge, and was conscious of no bias or prejudice against the defendant. No abuse of discretion is shown.

Error is assigned on the overruling of challenges for cause to certain jurors.

In one instance, the juror said he had read some of the case and discussed it some, and had formed "somewhat of an opinion," that it would require some evidence on the part of the defendant to remove; that he had not talked with anybody who claimed to know about the case; that he thought he could give the defendant a fair trial; that he would be willing to be tried by a man feeling as he did about the case; that he would be guided by the evidence and the instructions of the court, and nothing else; that there was nothing in his mind that would prevent him from doing that. Another juror said that, from what he had read and heard about the case, he had formed some opinion, that it would require some evidence to remove; that he could lay that aside, and try the case upon the evidence and the law as given by the court, and nothing else; that his opinion was not unqualified, and would not influence him in any way in the trial of the case. There was no error in overruling challenges to these jurors. *State v. Field,* 89 Iowa 34; *State v. Foster,* supra; *State v. Hassan,* supra.

4. JURY: competency: qualified opinion.

It is contended that there was prejudicial misconduct on the part of an attorney for the State in suggesting to the court, in the presence of the jury, that the witness Harriett Martin should be arrested, and on the part of the court in ordering the sheriff, in the presence of the jury, to place the witness under arrest. The record discloses that the witness had been cross-examined at considerable length concerning her testimony on former trials, and had admitted, in some instances, that her testimony just given differed from that formerly given by her. Her answers were frequently evasive and not responsive. At the close of her examination, one of the attorneys for the State said:

5. NEW TRIAL: misconduct of county attorney: demanding arrest of witness.

"If the court please, this witness, as you have heard her testimony here, I ask the court to take such action as is proper and necessary under the circumstances."

The record, as made by the official reporter, does not show that any action was taken on the request, or that anything

further occurred in that connection. In support of a motion for a new trial, defendant filed affidavits that, after purporting to give the request of counsel, though in materially different language from that quoted above, recite as follows:

"That Sheriff Findley was in court, near the jury box, at the time, and immediately approached Judge Thompson, who seemed to have motioned to him from the bench; and after a brief conversation in a low tone of voice, the sheriff came around in front of the jury, as the witness was making her way from the stand, and took her by the arm and turned her around, and, still keeping his hold on her arm, led her from the court room, in the presence of the jury and the court."

It is not shown that the court directed that the witness be arrested, or that she was in fact arrested. If it be conceded that such an inference might be drawn from this transaction, is it the only reasonable inference that can be so drawn? Error is not to be presumed. It must appear upon the record. If it should be conceded that, when counsel requested the court to take such action as was necessary and proper under the circumstances, he was asking that she be arrested for perjury,—and this must be but an inference, for he did not in direct terms make any such request,—that, while untimely and improper, standing alone, would not require a reversal. *State v. Pilkington*, 92 Iowa 92; *People v. Duncan*, 261 Ill. 339 (103 N. E. 1043).

The witness is described by counsel for appellant as "an old colored woman, approximately seventy years of age, very illiterate, and easily excited." She had been subjected to a vigorous and lengthy cross-examination, relating largely to her testimony on former trials; she had repeatedly contradicted herself, had been several times admonished by the court to answer the questions put to her, and was apparently much confused. These circumstances are mentioned, not as affording any excuse for her arrest in the presence of the jury, but as indicating that the inference that she was so arrested is not the only reasonable one to be drawn from the facts that the court spoke to the sheriff and the latter led her from the room. In the absence of any showing whatever that the court did in fact so direct, or that she was ever actually arrested or taken into custody as an offender, we do not think the circumstances are such as to

require us to so find.   In connection with the indefinite request of counsel, a situation was presented that was susceptible, no doubt, of that construction, and one that, for that reason, should not have been permitted to arise, but not one, we think, from which it must be presumed that prejudice resulted.

The defendant, when on the witness stand, was asked if he had ever been convicted of a felony, and said that he had. When asked how many times, he said:

6. WITNESSES: credibility: details of former convictions.     "My best judgment is, twice.  I am not sure,—it could be more.  It might be three times,—I am not sure."

Following these answers, he was asked if he had not been convicted at particular places, and of what offenses.   Over objection, he was required to answer.  He was again asked how many times he had been convicted, and replied: "You have got a record here,—that will show."   The court, in ruling on the objection, said:

"I don't propose to permit the question as to details to be offered, but the character of the offense may be pointed out and identified."

The ruling followed the authority of *State v. Carter*, 121 Iowa 135, and was proper.   The State had a right to show, for the purpose of affecting his credibility, that he had been so convicted, and how many times, and, in view of the uncertain memory of the witness, had a right to call his attention to the particular crimes and the circumstances, and to the places where they were committed, in the effort to refresh his recollection. *Dickson v. Yates*, 194 Iowa 910.   The offenses inquired about were not similar to the one for which the defendant was then being tried, and the case does not come within the rule laid down in *State v. Concord*, 172 Iowa 467, where there was a manifest effort to show, under the guise of impeachment, that the defendant had been convicted of a like offense.

The defendant offered to show by a witness, Matt Thies, that the witness had been at one time in charge of the identification bureau of the sheriff's office; that pictures were made of

finger prints in the clay at the scene of the crime,
and of finger prints of the defendant, and that
the witness had compared them, and they were
not the same; that the witness was no longer
connected with the sheriff's office, and did not know where either
the clay or the finger prints were; and that he believed that the
pictures made of the finger prints at the scene of the crime were
in the hands of the state identification bureau; and that defend-
ant had been unable to get any track of them. The photographs
themselves were the best evidence of what they showed. *Elzig
v. Bales,* 135 Iowa 208; *Lang v. Marshalltown Lt. P. & R. Co.,*
185 Iowa 940; *Daniels v. Iowa City,* 191 Iowa 811. The fact
that the witness no longer had them under his control, and did
not know where they were, did not authorize secondary evidence
to be received of what they showed. They were not shown to
have been lost or destroyed. They were apparently among the
records of a public office, and doubtless available for production
on the trial, had proper methods been pursued. Counsel was
advised by the court that, if produced, they would be admitted.
Whether, had the photographs themselves been in evidence,
testimony might have been received in explanation of what they
showed, we are not called upon to determine. There was no
error in refusing to admit the offered testimony. *Marion v.
Coon Const. Co.,* 216 N. Y. 178 (110 N. E. 444).

7. CRIMINAL LAW: evidence: best and secondary: dissimilarity of finger prints.

Complaint is made that certain witnesses for the defendant
had, after the indictment was returned against him, been called
before the grand jury and interrogated on the matter concern-
ing which they testified on the trial, and that
statements made by them before the grand jury
were introduced by the State, over objection,
for the purpose of impeachment. In this there was no error.
In *Coppenhaver v. State,* 160 Ind. 540 (67 N. E. 453), the pre-
cise question was raised, and it was said that, while it might be
that the witnesses would have some ground of objection on
being called before the grand jury after an indictment was
returned, it was not perceived how the indicted person could
ordinarily complain, and that:

8. WITNESSES: impeachment: minutes before grand jury.

"Even if it appears, as the result of such a course, that the
witnesses that he afterwards calls are seriously contradicted by

their testimony before the grand jury, it would seem to be a sufficient answer to his complaint that the search is for the truth, and that he has no such peculiar interest in his witnesses that he may successfully complain that they have been interrogated as to the facts in advance of the trial.''

In that case, the defense was insanity, and the witnesses so called before the grand jury were sisters of the defendant, and they were required to testify to the family history and his antecedent conduct, and to express an opinion as to his sanity. This testimony was used by the State in cross-examining the witnesses on the trial. Here, the witnesses testified in support of the defendant's defense of alibi, and their testimony before the grand jury was similarly used. It cannot be contended, of course, that, on learning that the defense of one under indictment will be of an affirmative nature, and will depend on facts disconnected with the act itself, the State cannot investigate the facts on which it will be based. And, as said by the Indiana court, the manner of the investigation concerns the witness, rather than the defendant. It is not pointed out, nor are we able to see, in what manner any constitutional rights of the defendant's were invaded.

In this connection, complaint is made of the refusal of the court to order that a copy of the minutes of the testimony of these witnesses be furnished to the defendant.

When an indictment is found, the names of all the witnesses on whose testimony it is found must be indorsed thereon before it is presented in the court, and must be, with the minutes of the evidence of such witnesses, presented to the court by the foreman, in the presence of the grand jury. Code Section 5276. Such minutes of evidence shall not be open for the inspection of any person except the judge, the county attorney, the defendant, and his counsel.

9. INDICTMENT AND -INFORMATION: minutes of testimony: unused minutes.

''The clerk of the court must, within two days after demand made, furnish the defendant or his counsel a copy thereof without charge, or permit the defendant's counsel, or the clerk of such counsel, to take a copy.'' Code Section 5277.

The indictment was not found on the testimony of these witnesses, nor was a minute of their testimony with the indict-

ment when it was returned. These provisions afford no basis
for the demand that defendant be furnished a copy of the
minutes. The minutes themselves were not offered in evidence
nor shown to the witness. We think there was no error in
refusing to order that a copy be given defendant.

It is insisted that the court erred in not permitting the
witness Harriett Martin to explain, on cross-examination and
redirect examination, the discrepancy in her testimony. No
specific rulings are pointed out as erroneous. Upon a search
of appellant's abstract, two questions are found that were pro-
pounded to the witness on redirect examination relating to what
she had testified on a former trial. To these, objections were
sustained. Neither of the questions called for any explanation
of her testimony. Questions and answers from the transcript
of her former testimony were merely read to her, and she was
asked if she so testified. She had already testified to substan-
tially the same things, on the trial then in progress. We find
no prejudicial error here.

The defendant, when on the witness stand in his own be-
half, was asked:

"Q. Now, Joe Williams, I want to ask you if, upon pre-
liminary hearing of George Davenport in the municipal court
in September, October, November, of 1921, you were not asked
the following question, and didn't you make the following answer, relating back to the time you said you had your lunch, you and Davenport: 'Q. Who paid for that? A. He did. Q. Then where did you go? A. Into the alley.' Did you so testify at that time and place?"

10. APPEAL AND
ERROR: pre-
sumptions: in-
voluntary testi-
mony.

To this the following objection was made:

"Mr. Howard: If the court please, the defendant at this
time desires to renew his objection to any questions asked on
preliminary hearing as being incompetent, irrelevant, immate-
rial, and improper, in violation of defendant's constitutional
rights, and for the further reason, as set up in the former record,
the defendant was carried over there against his will, and over
the objection of counsel, and compelled to testify, and it is un-
questionably against his constitutional rights."

The objection was overruled, and the defendant answered:
"I may,—I would not say sure I did."

The defendant had testified that the watch belonging to the
deceased, which he had pawned on the day she disappeared, was
given to him by Davenport, and that Davenport had confessed
to killing her. The defendant introduced other testimony tend-
ing to show that Davenport was guilty of the crime. The de-
fendant had been arrested a few days after the discovery of the
body of deceased, and later released. Davenport was also
arrested, at what time the record does not disclose. But it
appears from a comparison of the date on which the indictment
was returned, and the date of Davenport's preliminary examina-
tion, as disclosed in the question, that the latter occurred after
the defendant was indicted. It may be conceded that the de-
fendant could not be compelled to give testimony against Daven-
port that might tend to incriminate himself. That is the basis
of the objection to the question under consideration. But that
he might voluntarily testify against Davenport must also be
conceded. The record does not disclose any other question asked
of the defendant concerning his testimony on the Davenport
preliminary, nor any prior objection or "former record" to
which the objection set out above could refer. There is nothing
in the testimony of the defendant himself, as set out in the
abstract, to show that he was compelled to testify on the pre-
liminary examination of Davenport, nor is such fact shown in
any way whatever. It is true, it is alleged in the motion for a
new trial that his testimony on that occasion was given over
Davenport's objection, and that Williams asked that he be not
compelled to give evidence in that case. This is a mere allega-
tion, absolutely unsupported by anything of record in this case.
Moreover, it may well be doubted if Williams could have refused
to testify against Davenport, so long as his testimony had no
tendency to incriminate himself. We conclude that it does not
appear but that the defendant's testimony on the Davenport
preliminary examination was voluntary. No other or further
attempt was made to show what the defendant had testified to
on the Davenport preliminary. No prejudicial error is shown
in the ruling in question.

Finally, it is insisted that the court erred in not giving an

instruction on the subject of alibi, and in refusing three instructions requested by the defendant. The instructions given to the jury, except one on the subject of impeachment, of which no complaint is now made, are not set out in the abstract. It does not appear, therefore, that the court did not instruct on the subject of alibi, or that the instructions given did not fully and correctly cover all matters to which the instructions requested related.

11. APPEAL AND ERROR: presumptions: scope of instructions.

We have examined the record with care, and, no prejudicial error being found, the judgment is—*Affirmed.*

ARTHUR, C. J., EVANS, PRESTON, STEVENS, and DE GRAFF, JJ., concur.