STATE OF IOWA, appellee, v. JACK RONALD HARRIOTT, appellant.

No. 49030.

(Reported in 79 N.W.2d 332)

NOVEMBER 13, 1956.

Leslie L. Boomhower, of Mason City, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak and Dudley C. Lowry, Assistant Attorneys General, and William Pappas, County Attorney, for appellee.

OLIVER, J.—A county attorney's information charged defendant with larceny of a motor vehicle, contrary to section 321.82, Code of Iowa, 1954. Trial to a jury resulted in his conviction, sentence and this appeal.

A detailed confession signed by him recited he stole the parked automobile the evening of March 3, 1956, and sold it for $60 to Harold Walkner, who dismantled it. In the trial Walkner's partner testified to defendant's selling the automobile and its dismantling. When the loss of the car was discovered defendant was arrested and taken to the police station, March 5, at 10 or 11 p. m. He testified officers at the police station examined him about the taking of the car, from 10 p. m. until midnight, shortly thereafter for forty-five minutes, and at 2:30 a. m. for two hours; he was too nervous to sleep; he was given breakfast; at 8 a. m. Officer McClintock examined him and told him "he (McClintock) could either give me a chance to go to the Army or get me six months or a year parole * * * and he would go to bat for me." Defendant signed the confession at 10:20 that morning. He testified he signed it because he thought he would get a parole.

The record shows he had schooling to the eighth grade and had been convicted of a felony. He testified he "took back" his confession. However, he made no reference to any of the details therein nor to his guilt or innocence of the offense for which he was being tried.

The police officers testified defendant was interrogated for twenty or thirty minutes after 11 p. m., for a few minutes after midnight and again from about 2:30 to 3:15 in the morning. Defendant then denied his guilt. Officer McClintock next questioned him from 8 a. m. to 10:20 a. m., at which time defendant

signed the confession. Officer McClintock testified defendant made the confession voluntarily and no threats or promises were made defendant then or at any other time. "I didn't tell him that I would try to get him into the military service if he signed a statement or that I would try to get him six months."

█ █ I. Defendant contends the confession was involuntary as a matter of law and should not have been admitted in evidence over his objections. Assuming the sufficiency of his testimony, if uncontroverted, to show the confession was involuntary because induced by the promise of a parole, the testimony of the officer to the contrary generated an issue of fact upon this point. The issue whether it was voluntary was submitted to the jury. It is clear this did not abridge defendant's rights. State v. Strable, 228 Iowa 886, 293 N.W. 441; State v. Williams, 245 Iowa 494, 500, 62 N.W.2d 742, 745, and citations; State v. Case, 247 Iowa 1019, 1022, 1023, 75 N.W.2d 233, 236, 237, and citations. Nor would the circumstances that he had not been advised of his right to and did not then have counsel and was without sufficient sleep render the confession inadmissible. State v. Hofer, 238 Iowa 820, 828, 28 N.W.2d 475, and citations; State v. Strable, supra, 228 Iowa 886, 892, 293 N.W. 441.

█ II. There is no merit in defendant's contention his rights were violated because he was arrested without a warrant and was held without charge until his confession was obtained. Section 755.4, Code of Iowa, 1954, provides for arrest by a peace officer without a warrant. We have already held the question whether the confession was voluntary was for the jury.

█ III. The record of the cross-examination of Officer McClintock by counsel for defendant, shows: "Q. Didn't you say to him (defendant) you would try to get him in the service? A. I knew he couldn't get into the service, and I knew if he had a previous record, they wouldn't take him. (Object to that as highly prejudicial. Overruled.)" Later, in the absence of the jury, the court observed that the statement appeared inadvertent, and offered, if requested by defendant, to caution the jury to disregard it. No error appears here. Thereafter, defendant testified and admitted he had been convicted of a felony.

█ IV. Defendant signed the confession at 10:20 a. m., March 6. He remained in jail and was formally charged with

larceny of the motor vehicle at 8:30 a. m., March 7. Immediately thereafter the jailer took defendant from his cell to the preliminary hearing of Walkner held in the same building. The charge against Walkner, not specified in the record, stemmed from his purchase of the automobile. Defendant testified he had told them he did not want to testify. Although the record is not clear, it indicates Walkner's attorney objected to the first questions put to defendant, and apparently raised the question of defendant's privilege. Of course, such claim may properly be made by the witness or his attorney, only. In any event, the objections were not sustained and defendant answered that he took the automobile and that he sold it to Walkner.

Then, according to a witness for the State, defendant, "didn't say anything about the constitution. He merely said 'I don't care to answer any more questions for fear it will incriminate me.'" Defendant testified, "I didn't want to answer. So he (the county attorney) said, he asked the Judge that I should be able to answer, should have to be made to answer." The record shows the magistrate permitted the questioning of the witness to proceed.

At the trial of defendant, here upon appeal, four witnesses for the State testified that at the Walkner preliminary hearing defendant testified under oath that he took the car and sold it to Walkner. The trial court overruled defendant's objections to this testimony, which recounted defendant's testimony before he claimed his privilege. The court sustained objections to the testimony recounting the part of defendant's testimony after he claimed his privilege.

It would appear the ruling of the trial court was based upon the theory the only testimony inadmissible was that elicited after defendant claimed his privilege. Defendant had no legal representation nor was he informed of his privilege against self-incrimination. It is true he did claim his privilege after testifying he took and sold the car. Many laymen have heard of such privilege but may not know how to claim it. It is not improbable defendant claimed his privilege upon learning the procedure from the objections made by Walkner's lawyer.

In State v. Clifford, 86 Iowa 550, 551, 552, 53 N.W. 299, 300, 41 Am. St. Rep. 518, defendant, while under arrest and in jail,

charged with the crime there in question, was brought before the grand jury and examined under oath, without being informed of his rights or that his answers could be used against him. The opinion states:

"The course of procedure pursued by the grand jury with reference to the examination of this witness was unprecedented, and, to our minds, wholly unjustifiable from any point of view. They had no right to compel the defendant, then in custody, and charged with the commission of the crime inquired about, to give testimony before them. To put him under oath, under such circumstances, without advising him of his rights, was attempting to take an unfair advantage of his situation, to his prejudice. A statement so procured could in no proper sense be said to be voluntarily made. A confession or statement, to have been voluntarily made, must proceed 'from the spontaneous suggestion of the party's own mind, free from the influence of any extraneous disturbing cause.' 'If made under oath by the party charged, upon a judicial inquiry as to the crime, it [the confession] is rejected, as not being voluntary.' [Citation] The law is well settled that when a person is compelled to answer questions under oath, put to him by a committing magistrate, touching his supposed connection with the crime then being investigated, and of which he stands accused, his statements are not admissible against him. [Citations] And it is said that, unless the defendant comprehended his rights fully, and is informed by the court or examining body that his refusal to answer the questions propounded to him could not prejudice his case, or be construed as an evidence of his guilt, any responsive confessions implicating him in the crime charged must be regarded as involuntary, and hence inadmissible. [Citations] The same rule would apply as to examinations had, as in this case, before a grand jury. Some of the states, by statute, require magistrates conducting such examinations to admonish the prisoner as to the effect of his answer and his right to refuse to answer, but it is believed that the general rule of law is as above stated, even in the absence of such a statute."

In State v. Meyer, 181 Iowa 440, 449, 450, 451, 164 N.W. 794, 797, defendant, a murder suspect, was called before a cor-

oner's jury. Evidence of her testimony there was held inadmissible as involuntary:

"Clearly, if one is called into a judicial proceeding in which his guilt or innocence is involved, he cannot be required to testify as to any matter which would tend to incriminate him. If he is compelled to answer, under oath, questions put to him by a judicial officer having charge of an investigation touching his connection with the crime then being investigated, statements then made are not admissible in any future proceedings involving the same offense, when he is put on trial for that offense. * * * But if it appears that a coroner's jury is sitting to investigate the cause of the death of one whose death is suspected to have been the result of foul play, and the one who is suspected of being implicated in the crime is summoned or subpoenaed to appear before the jury and give testimony, and is sworn to tell the truth, and is not informed of his right to refuse to testify, and is not provided with counsel, and is compelled, or believes he is compelled, to answer questions propounded to him by the coroner or by those assisting in the investigation, his answers so given cannot be said to be voluntary, and cannot be used against him thereafter, in the event he should be ultimately formally charged with the commission of the crime investigated. * * *

"We think evidence obtained in this way would not be admitted against her. To allow it would be violative of well-established rules recognized by this court. The same power that punishes makes also the law that protects [citations]."

State v. Sentner, 230 Iowa 590, 607, 608, 609, 298 N.W. 813, 820, held inadmissible defendant's testimony before a military commission: "Just how the defendant was procured to testify does not appear. He had no counsel or legal adviser representing him. It does not appear that he was advised of his rights respecting the use against him of anything he might say. We do not mean to say or imply that because he had no counsel and was not advised as to his rights, standing alone, made the statements involuntary, but we mention them as factors to be considered."

Doyle v. Willcockson, 184 Iowa 757, 759 to 761, 169 N.W. 241, holds self-incriminating testimony, given before a grand

jury on appearance obtained by subpoena, even though given in a proceeding wholly against another party, and even though the witness makes no claim of privilege, may not be used against the witness in a subsequent prosecution.

An article in 5 Iowa Law Bulletin 174, 186, states the court need not warn a witness of the existence of the privilege, but amplifies this in a note, "Distinguish from the above point the compulsory examination by a grand jury of a person then under arrest as to facts material to the charge without warning him that his answers may be used against him."

See also comment in 29 Iowa Law Review 373; State v. Kneeskern, 203 Iowa 929, 947, 210 N.W. 465; State v. Westcott, 130 Iowa 1, 5, 6, 104 N.W. 341; annotation in 5 A.L.R.2d 1404, 1442 (§16), 1449 (§20), 1453 (§21), 1460 (§25).

State v. Williams, 197 Iowa 813, 197 N.W. 991, cited by the prosecution, is not in point. There it appeared defendant testified voluntarily against one Davenport, in an effort to shift responsibility for the murder of which defendant was subsequently convicted. Furthermore, it did not appear defendant's testimony had a tendency to incriminate himself. Burk v. Putman, 113 Iowa 232, 84 N.W. 1053, 86 Am. St. Rep. 372, cited by the prosecution, was not a criminal case.

The foregoing authorities and reasoning require the conclusion the admission in evidence, over defendant's objections, of his testimony in the Walkner hearing, was erroneous. That there may be other evidence sufficient to support a verdict of guilty does not render such an error harmless.—Reversed.

All JUSTICES concur.