STATE OF NEW JERSEY, RESPONDENT, v. LOUIS DeCOLA, JOSEPH A. DIANA AND LAWRENCE HURLEY, DEFENDANTS.

IN THE MATTER OF THE CRIMINAL CONTEMPT OF CHARLOTTE HANSEN, DEFENDANT-APPELLANT.

First Appeal Argued June 4, 1959—First Appeal Reargued and Second Appeal Argued September 13, 1960— Decided October 24, 1960.

336

Mr. *James F. McGovern, Jr.,* argued the cause for appellant (Mr. *James F. Norton,* on the brief).

Mr. *Michael G. Comunale,* Assistant Prosecutor of Hudson County, argued the cause for respondent (Mr. *Lawrence A. Whipple,* Hudson County Prosecutor, attorney; Mr. *Edward F. Hamill,* of counsel, on the brief).

Mr. *William A. O'Brien,* Assistant Prosecutor of Hudson County, argued the cause for respondent (Mr. *Lawrence A. Whipple,* Hudson County Prosecutor, attorney; Mr. *Ralph P. Messano,* First Assistant Prosecutor, of counsel, on the brief).

Mr. *Burrell Ives Humphreys,* Deputy Attorney General, argued the cause for respondent (Mr. *David D. Furman,* Attorney General, attorney; Mr. *Charles S. Joelson,* Deputy Attorney General, of counsel; Mr. *Burrell Ives Humphreys,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

WEINTRAUB, C. J.   Charlotte Hansen appeals from convictions for criminal contempt arising out of refusals to testify.

Mrs. Hansen appeared before a grand jury investigating a homicide. Three men were indicted for murder, in part upon her testimony. Later, a New York daily carried a story of her purported recantation. She was thereupon summoned by a subsequent grand jury before which however she declined to answer the same questions she had answered before the first grand jury. The Superior Court ordered her to answer, and upon her continued refusal she was adjudged guilty of contempt and fined $100. She appealed, and we certified the matter on our motion before the Appellate Division considered it.

While the first appeal was awaiting reargument, the murder indictment was brought to trial. Mrs. Hansen, subpoenaed by the State, again disobeyed an order to answer the same questions. She was adjudged guilty of criminal contempt and fined $500. She appealed, and we certified the matter on our motion.

Mrs. Hansen did not suggest further testimony would tend to incriminate her with respect to the homicide, the subject of the original grand jury examination. Indeed she expressly disavowed that hazard. Rather she claimed further interrogation might reveal perjury in the testimony she had given.

## I.

We shall first consider the conviction for refusal to answer before the second grand jury.

The State presses a procedural objection. It contends Mrs. Hansen should have appealed from the order directing her to answer and that an appeal from the judgment of conviction is a "collateral" attack upon that order. We disagree.

An order sustaining a refusal by a witness to answer disposes of the immediate issue with finality and therefore is a final judgment, *Application of Tiene*, 19 *N. J.* 149, 159–160 (1955), but an order to answer is at best interlocutory and hence not reviewable of right until the pro-

ceeding against the witness is concluded by the judgment of sentence. See *Alexander v. United States,* 201 U. S. 117, 26 S. Ct. 356, 50 L. Ed. 686 (1906). The process is but a single one, to enforce the underlying duty to testify. A witness who in good faith asserts a privilege not to answer is entitled to a ruling, and indeed without one his refusal could not ordinarily be said to be contumacious. See *Quinn v. United States,* 349 U. S. 155, 165, 75 S. Ct. 668, 99 L. Ed. 964, 973–4 (1955). The decision upon the claim of privilege and the order to answer thus have but an intermediate role. We see no reason to cloak the order with finality and thereby fragmentize the process of enforcing the witness's duty to testify. The order to answer is accordingly reviewable upon an appeal from the final judgment of sentence.

Hence we reach the merits. The State contends the second grand jury inquiry was but a continuation of the first, and Mrs. Hansen having testified before the first without claim of privilege, she waived her right thereafter to assert it, at least as to the very questions she had answered. Further the State urges that even if the second inquiry be deemed independent of the first, the waiver nonetheless continued.

The fact that an earlier grand jury has returned an indictment does not foreclose a reinvestigation by a later grand jury of the same offense. If circumstances suggest the offense nonetheless may be unsolved, another grand jury may inquire if the actual offender is at large. Here the news account of appellant's recantation would readily have invited that further inquiry, and had the second grand jury been so concerned, the issue of waiver would have arisen in the form in which the State offers it. But the record plainly shows the second grand jury sought to explore the criminal liability of appellant for perjury. In response to the foreman's inquiry as to the purpose for which appellant was about to be questioned, the prosecutor explicitly said an indictment against appellant was sought if she did not adhere to her prior testimony. Thus, although originally a witness

with respect to the criminality of others, she was summoned to reveal involuntarily a basis for her own indictment for perjury in her initial testimony.

The privilege against self-incrimination is of ancient origin. Its genesis is traced to inquisitions by ecclesiastical officials and later by secular authority to compel a man to disclose the commission of an offense with which he had not been charged. Later it applied as well to protect one under formal charge from compulsory condemnation by his own lips. *Morgan, Basic Problems of Evidence* (1957), *p.* 127. Thus the privilege was oriented to the protection of a defendant, actual or prospective. This is apparent in the usual constitutional phrasing, such as in the Fifth Amendment of the Federal Constitution, that "No person * * * shall be compelled in any criminal case to be a witness against himself."

At an early date the common law applied the privilege as well to the ordinary witness notwithstanding he was neither accused nor suspect. The constitutional provisions to which we have referred are construed to embrace that extension. In New Jersey, the privilege, although not assured by organic law, nonetheless was originally protected as a matter of common law and now is by statute. *State v. Auld,* 2 *N. J.* 426, 436 (1949). At the time of the present litigation *N. J. S.* 2A:81–5 (since superseded by *L.* 1960, *c.* 52, §§ 17 and 19) provided:

"No witness shall be compelled to answer any question if the answer will expose him to a criminal prosecution or penalty or to a forfeiture of his estate."

■ Protection is given a *witness* to achieve the basic policy against compulsory self-condemnation. But it has other implications, for manifestly it affects the interests of litigants who are denied the benefit of the facts the witness conceals under his personal privilege. Such is the context in which the validity of the second conviction before us will presently be weighed. But where, as in the case of the

first conviction to which our attention is now addressed, the purpose of the inquiry is to determine the liability of the witness for a crime supposedly committed by her, we have the precise situation for which the common law privilege was established. 8 *Wigmore, Evidence* (*3d ed.* 1940), § 2263, *p.* 362. Appellant was the target of an inquisition designed to compel her to reveal whether she had committed crime.

■ We think the case is controlled by *State v. Browning,* 19 *N. J.* 424 (1955) and *State v. Fary,* 19 *N. J.* 431 (1955). There the doctrine was accepted that a person whose criminal liability is the object of a grand jury inquiry must be informed of his privilege to withhold evidence tending to his own incrimination. If there is a duty to warn, the privilege not to testify is implicit.

The State however cites the concluding paragraph of *Fary* (19 *N. J.,* at *p.* 440) which states "a waiver barring their right to assert the privilege at the second inquiry may be constructed" when the questions put in the second proceeding are the same as those answered before the first grand jury without claim of privilege. But in *Fary* the witnesses were not the target of either proceeding before the grand jury. On the contrary, both proceedings were general inquiries into the operations of the township road department.

The State also advances *Loubriel v. United States,* 9 *F. 2d* 807 (*2 Cir.* 1926). There a witness before a grand jury testified he did not know the names of his employer's customers. The answer was found to be a palpable refusal to answer. He was adjudged in *civil* contempt and committed with the proverbial "key" in his pocket. He later sought an opportunity to purge himself, and since the first grand jury had already been discharged, he was accorded the opportunity before a new grand jury. Upon his appearance there, his answers were inadequate and hence it was found he had not purged himself. Upon *habeas corpus,* he contended that although a court could commit civilly for a point-blank refusal to answer, it could not if the witness disavowed knowledge.

The quandary was that if the witness did purge himself, he would thereby establish his earlier disclaimer of knowledge was perjurious. The court held a witness may not block an inquiry by falsely denying knowledge and then continue the same obstruction by pleading that to answer will enmesh him in trouble because his initial recalcitrance was in the form of a denial of knowledge rather than a refusal to answer. The court deemed the examination of the witness to be a single affair notwithstanding the second appearance was before another grand jury. Quite obviously that was so, since the purpose was to obtain an answer to a question which remained open because of an unjustified refusal to speak, and indeed the appearance before the second grand jury was at the witness's behest to enable him to unlock the cell that held him. But the court did not suggest that where a witness has answered before a grand jury and then is subpoenaed before another, he may not plead the peril of perjury arising from his initial testimony. Indeed that question was expressly left open (at *p.* 808) :

"* * * We do not mean necessarily to include a second and independent hearing, even though concerned with the same subject. Whether or not one may then claim a privilege by virtue of the peril from his earlier testimony we do not say. In *Daniels v. United States*, 196 *F.* 459 (*C. C. A.* 6) 116 *C. C. A.* 233, so much was said *obiter*, and *Cameron v. United States*, 231 *U. S.* 710, 34 *S. Ct.* 244, 58 *L. Ed.* 448, is not to the contrary. But there is a clear distinction between a single inquiry and succeeding ones; as to the first there is no doubt."

And, we should add, although the inquiry was deemed to be a single one insofar as Loubriel was being accorded an opportunity to clear himself of contempt, the second grand jury proceeding was held otherwise to be separate and independent. Indeed upon that basis Loubriel was discharged. Specifically, it was held that although he could be punished for the criminal contempt by a fixed sentence, yet the civil commitment was designed to compel compliance with the subpoena to testify before the first grand jury,

and that obligation, together with the civil commitment to compel compliance, expired with that grand jury. "Each investigation is separate and independent; it terminates with the grand jury which undertakes it, and the next does not take it up as unfinished business" (at *p.* 809).

In any event, nothing in *Loubriel* suggests that testimony before a grand jury operates to deprive the witness of his privilege when summoned before a second grand jury pursuing an investigation directed against the witness himself. We are satisfied the privilege exists. See *People ex rel. Hofsaes v. Warden of City Prison,* 277 *App. Div.* 398, 100 *N. Y. S.* 2d 478 (2d *Dept.* 1950), affirmed on other grounds, 302 *N. Y.* 403, 98 *N. E.* 2d 579 (*Ct. App.* 1951). The first conviction here under review must therefore be reversed.

## II.

The second conviction presents a troublesome question. Here appellant was an ordinary witness in the trial of the indictment against others. When a privilege is recognized in a witness, injustice may result to the litigants. The injustice may be to the State when a witness, recalcitrant through fear, favor or bribe, asserts the hazard of self-incrimination. The injustice may run to the defendant on trial, for the witness, despite his testimony before a grand jury, may indeed hold the key to the defendant's innocence.

## A.

Hence two values are involved: (1) the right of litigants to a just decision upon the whole truth and (2) the right of a witness to refuse to condemn himself by his own lips. Perhaps both values could have been preserved by requiring the witness to testify and then prohibiting the use against him of what he said and the product of the clues his testimony revealed. But the law took another course. It accorded to the witness the privilege of silence. One reason may have been that historically some viewed the privilege as

designed to protect against *disgrace* as well as from conviction and punishment, and hence the very act of disclosure would visit a harm the privilege was intended to prevent. The present day view, however, limits the privilege to protection against punishment, *In re Vince,* 2 *N. J.* 443 (1949), and hence that reason no longer burdens the area. A second and perhaps the sole significant reason was a belief that full protection for the witness could not in fact be achieved by the alternative approach to the dilemma. See *Counselman v. Hitchcock,* 142 *U. S.* 547, 564–565, 12 *S. Ct.* 195, 35 *L. Ed.* 1110, 1114 (1892) ; but see *Maguire, Evidence of Guilt,* 74–5, n. 7 (1959); *McNaughton, Self-Incrimination Under Foreign Law,* 45 *Va. L. Rev.* 1309, n. 68 (1959).

At any rate, the preference for the witness's privilege over the interests of the litigants gave rise to a doctrine which plagues the scene. The doctrine is "waiver." The privilege of the witness of course is personal and he may relinquish it. But unlike a defendant to a criminal charge, see *State v. Auld, supra* (2 *N. J.,* at *pp.* 436–437), a witness must take the stand. He must testify up to the point where an answer will tend to incriminate. The determination of that juncture may confound a scholar, but the unlettered witness must nonetheless find it. If he wanders into danger, his answers and their end-product will be useable against him. Moreover at a trial concerning others, the need for justice to the litigants understandably tends to loom above the seemingly more remote value, the privilege of the witness; and since disclosure of only a part may garble the truth and be more mischievous than no testimony at all, there is pressure to expand whatever "waiver" may have occurred. In sum total, the rule that a witness may assert his privilege (as opposed to one which would require him to speak while shielding him against the use of his words) had led to attrition of the very privilege it was intended to protect.

It is against this backdrop that one must consider whether testimony given in one proceeding without claim of privilege

should constitute a "waiver" of the privilege at a later hearing. The clash is between the basic values we have discussed. Which should prevail? Judicial decisions are virtually unanimous in favor of the witness's privilege. *United States v. Miranti,* 253 *F. 2d* 135 (2 *Cir.* 1958); *In re Neff,* 206 *F. 2d* 149, 36 *A. L. R. 2d* 1398 (3 *Cir.* 1953); *United States v. Field,* 193 *F. 2d* 109 (2 *Cir.* 1951); *United States v. Vadner,* 119 *F. Supp.* 330 (*D. C. E. D. Pa.* 1954); *United States v. Malone,* 111 *F. Supp.* 37 (*D. C. Cal.* 1953); *United States v. Steffen,* 103 *F. Supp.* 415 (*D. C. Cal.* 1951); *Ex parte Sales,* 134 *Cal. App.* 54, 24 *P. 2d* 916 (*Cal. D. Ct.* 1933); *Duckworth v. District Court,* 220 *Iowa* 1350, 264 *N. W.* 715 (*Sup. Ct.* 1936); *Apodaca v. Viramontes,* 53 *N. M.* 514, 212 *P. 2d* 425, 13 *A. L. R. 2d* 1427 (*Sup. Ct.* 1949); *People v. Cassidy,* 213 *N. Y.* 388, 107 *N. E.* 713 (*Ct. App.* 1915); *Miskimins v. Shaver,* 8 *Wyo.* 392, 58 *P.* 411, 49 *L. R. A.* 831 (*Sup. Ct.* 1899); 8 *Wigmore, Evidence* (3d ed. 1940), § 2276(4), *p.* 450.

The reasons given are several. "Waiver," if one is intellectually faithful, is an intelligent, voluntary thing. It is doubtful the ordinary witness makes a decision of that quality. He may indeed know the law accords a privilege, but it is likely he does not appreciate the risk his answers hold. In any event, intervening circumstances may suggest a liability not theretofore in view. Moreover, repetition of the same answers may accentuate the hazard either because it negates inadvertence or because two admissions are more devastating than one. Still further, a second proceeding may enlarge the danger if the examination is expanded by change in issues or by further cross-examination.

The State argues that the concluding paragraph of *Fary* (19 *N. J.,* at *p.* 440) to which we have already referred adopted the view that answers given in one proceeding constitute a waiver as to the same questions in a later hearing. In *Fary,* the privilege was not asserted in either examination and hence the expression was *obiter.* But the State says the

*dictum* is now reinforced by the enactment after the convictions here under review of *chapter* 52 of the *Laws* of 1960. It urges that § 29 of that act adopted *Rule* 37 of the Uniform Rules of Evidence and that rule provides for a continuation of a waiver into a subsequent proceeding. Perhaps so.[1] We need not, however, decide the question because

---

[1] *Section* 29 of *Chapter* 52 did not adopt *Rule* 37 in its precise form. The statute reads:

"A person waives his right or privilege to refuse to disclose or to prevent another from disclosing a specified matter if he or any other person while the holder thereof has (a) contracted with anyone not to claim the right or privilege or, (b) without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone.

A disclosure which is itself privileged or otherwise protected by the common law, statutes or rules of court of this State, or by lawful contract, shall not constitute a waiver under this section. The failure of a witness to claim a right or privilege with respect to 1 question shall not operate as a waiver with respect to any other question."

The first paragraph comports substantially with *Rule* 37, but the second paragraph is additional material. The view that *Rule* 37 and the identical *Rule* 231 of the Model Code of Evidence operate to carry a waiver into a subsequent proceeding is supported by *McCormick, Evidence* (1954), § 130, *p.* 274 and *Morgan, Basic Problems of Evidence* (1957), *p.* 152, *n.* 1. The Committee on the Revision of the Law of Evidence in its report to the Supreme Court of our State (1955), observed (at *p.* 82):

"The words 'in the same trial or in an earlier cause' could be inserted in part (b) in order to make clear the intention of the rule. In this respect the rule is contrary to the decided weight of authority in other jurisdictions. See 1 *Morgan, Basic Problems of Evidence* 152 (1954) stating that it is settled that a person who has testified to an incriminating matter in an earlier proceeding or in an earlier stage of the same proceeding may nevertheless claim his privilege at a later trial; see 8 *Wigmore* 450 *et seq.* stating likewise that the waiver is limited to the particular proceeding in which the testimony is involved. The rule modifies this in only a limited respect, and it seems to be justified; it is limited to a 'specified matter' when part of that very matter has been previously disclosed."

The Report of the Legislative Commission to Study the Improvement of the Law of Evidence (1956), which proposed the language of *section* 29, did not repeat the quoted observation of the Court's committee.

neither the *dictum* of *Fary* nor the cited rule reach the immediate problem.

If Mrs. Hansen had claimed a privilege with respect to the homicide, the issue would be presented. But neither *Fary* nor *Rule* 37 touch a claim of privilege with respect to *perjury* in the initial testimony. The privilege necessarily relates to some antecedent event; it arises to protect the individual with respect to it. To say that a witness who testifies perjuriously thereby "waives" his privilege against self-incrimination with respect to that very offense is simply to deny the availability of the privilege with respect to the crime of perjury. If such were the intention of the skilled draftsmen of the rule, we would expect a direct statement of it. On the contrary the rule speaks of "waiver," an intelligent, voluntary matter, occasioned by a "disclosure." It is fiction to say that one who commits perjury thereby intends to relinquish his privilege not to confess his guilt of that very crime. The fiction would be more evident but no greater if it were suggested that a thief, knowing of the privilege, waives his right of silence by the very act of theft and hence that one suspected of the offense must speak. Moreover the act of perjury can not be said to be a "disclosure" by the witness of the very offense in progress; the word relates to something in the past.

We find little authority dealing with this precise question. As we said in discussing *Loubriel,* the court there noted the question without expression of opinion. In *Neff, supra* (206 *F.* 2d 149), the witness had already been convicted of perjury in her testimony before the first grand jury and her appeal therefrom was pending when she declined to testify again at the trial of an indictment against others. The privilege seems to have been upheld on the broad basis that a waiver before the grand jury did not carry into a subsequent proceeding. The court did refer to the peril of perjury evident from the conviction for that crime which was then under appeal, but we gather the reference was intended to illustrate the wisdom of the broad proposition

that a waiver in one hearing does not carry into a later proceeding.

In *People v. Kramer,* 257 *App. Div.* 598, 14 *N. Y. S. 2d* 161 (*4th Dept.* 1939), a witness refused to answer when recalled before a grand jury. He said he would *repeat* his earlier answers and contended the repetition might worsen his situation if he should be charged with perjury since repetition would negate the possibility of inadvertence in the answers already given. The court examined the earlier testimony and found the claimed hazard to be baseless in fact. It, however, added that "We have not considered what would have been the case had the appellant not limited his contention to the result of giving the same testimony as previously given" (14 *N. Y. S. 2d,* at *p.* 163).

In *Crum v. Brock,* 136 *Miss.* 858, 101 *So.* 704 (*Sup. Ct.* 1924) and *Travelers Fire Ins. Co. v. Wright,* 322 *P. 2d* 417, 70 *A. L. R. 2d* 1170 (*Okla. Sup. Ct.* 1958), a claim of privilege because of the peril of perjury was denied. The precise basis is not too clear. As we read those cases, the thesis was that the privilege relates to testimony of essential *facts* of a crime, and that the facts as to which the witness declined to testify did not constitute essential ingredients of the offense of perjury. Those cases seem simply to deny the privilege exists in a witness with respect to perjury. There is no suggestion that the rationale is "waiver."

We are satisfied the troublesome concept of waiver is not the solvent of the problem before us and hence we proceed to another facet.

## B.

The problem is confounded by the thought that the claim of privilege may be spurious; that because of bribe, threat, or a purpose to favor another, a witness who speaks before a grand jury may later assert the privilege to cloak nothing but a refusal to repeat the truth. To anyone familiar with the knavery in this area, the fear is not academic. And the

greater the original insult to the public, the greater will be the inducement to "persuade" the witness to seek the sanctuary of a fabricated claim.

The possibility of a false claim brings into focus the question upon which we think this appeal must turn. That question is whether Mrs. Hansen revealed any basis whatever for her claim of jeopardy.

We start with the proposition that "The trial judge is not to accept the witness's mere statement that the answer will tend to incriminate him." *In re Pillo,* 11 *N. J.* 8, 19 (1952). Rather the court must evaluate the hazard. Here again an obstacle ensues from the basic approach that the ordinary witness need not speak and will be his own undoing if he does. Although the rule might have been that upon a claim of privilege the witness must reveal the details which thereupon would be locked in the bosom of the court, the accepted thesis forecloses a demand for such disclosure even for the purpose of the judge's decision. Rather the witness must somehow show enough to indicate a basis for fear while withholding facts which would prove it. As stated in *Pillo,* there must appear "reasonable ground to apprehend" the peril (11 *N. J.,* at *p.* 19).

When the occurrence of a crime is an established fact, as is usually the situation in murder, larceny or the like, a judge may, albeit with difficulty, decide whether there is reasonable ground to apprehend the claimed danger even upon a paltry showing. So also a question may carry its own threat, as for example when a witness is asked if he bribed an officer. Or the witness may actually be the object of a pending investigation, a circumstance which aids intelligent decision.

So with respect to perjury, the existence of an indictment for that crime may suffice to show substance in a witness's claim of peril. *Cf. Neff, supra* (206 *F.* 2d 149). Perhaps also where a witness is confronted with his prior testimony and asked directly whether it is a correct record or whether his answers were true, some hazard may be sensed to support

a claim of privilege. See *Ex parte Berman,* 105 *Cal. App.* 37, 287 *P.* 125 (*D. Ct. App.* 1930); *Bellinger v. The People,* 8 *Wend.* 595 (*N. Y. Sup. Ct.* 1831).

But here the claim of privilege uniquely defies such evaluation. All we have is a naked, unparticularized assertion of a hazard. The witness had not reached the stage, as in *Berman, supra,* of being asked to verify or deny the truth of prior testimony. If we assume Mrs. Hansen was stating inferentially that she would not adhere to her prior testimony, still there is no intelligent basis for determining whether she did face a peril. For all the court may know, the inferential assertion may be false, her original testimony may be the truth as she understands it, and hence if she is compelled to answer her testimony will coincide with her prior testimony. And if, the claim having been overruled, the witness should begin to contradict her earlier testimony, the difficulty would persist, for it may be the current version which is untrue and, needless to say, the privilege may not be allowed because of a present purpose to falsify. Nor would it be decisive that other witnesses or a party to the litigation may swear contrary to the witness's original testimony. Again the court cannot judge the reasonableness of the claim. It cannot evaluate even the question of falsity without perhaps in effect passing upon the very issue in the trial. More importantly, it cannot pass upon the critical question of the state of the witness's understanding and belief as to what is the truth. As to that vital element, in the naked circumstances before us, the privilege could be allowed only upon the mere say-so of the witness, and to do so would be to make the witness the exclusive judge of the privilege claimed.

We have considered *People v. Lawrence,* 168 *Cal. App. 2d* 510, 336 *P. 2d* 189 (*D. Ct. App.* 1959) and *Wilson v. Ohio Farmers' Ins. Co.,* 164 *Ind.* 462, 73 *N. E.* 892 (*Sup. Ct.* 1905). Whether they hold a contrary thesis we cannot tell because of the absence of a statement of the full circumstances in which the privilege was claimed. In any event,

we prefer the result we have stated for the reasons we have given.

Hence the trial court correctly overruled the claim of privilege, not because the privilege might not have truly existed, but rather because Mrs. Hansen could not demonstrate a reasonable basis for its recognition.

This is not to say that the privilege will be forfeited merely because the ingenuity of man cannot assay the validity of the claim at the *witness* stage. Rather it means that the privilege will be accorded the protection due it whenever it appears the claim that was overruled was indeed genuine. Specifically, if a witness so situated should later be charged with perjury in his *first* examination, the thesis of the charge necessarily would be that the claim made at the second hearing was well-grounded in fact. In such circumstances, it would be an unwarranted dilution of the privilege to hold that what was extracted from the witness despite his claim may later be used to condemn him. The underlying values are here fully reconciled by (1) compelling the witness to reveal the truth for the benefit of litigants and (2) barring the use of that testimony to inflict the very punishment the witness had feared.

This solution invites some subsidiary questions.

The first is whether the judiciary thereby extends an immunity which only the Legislature may provide. *Isaacs v. United States,* 256 *F. 2d* 654, 661 (8 *Cir.* 1958); *Apodaca v. Viramontes, supra* (212 *P. 2d* 425); *Doyle v. Hofstader,* 257 *N. Y.* 244, 177 *N. E.* 489, 494, 87 *A. L. R. 2d* 418 (*Ct. App.* 1931); *McCormick, Evidence* (1954) § 135, *p.* 284. The question is not troublesome. The court does not trade an immunity for the witness's testimony. Indeed the witness remains triable for the prior crime. Rather the court honors the privilege when its genuineness appears by shielding the witness from the very self-injury against which the privilege was intended to protect. It is nothing but an application of a principle, which seems nowhere to be denied, that if the privilege is improperly denied

or ignored the testimony may not be used against the witness. *Maguire, Evidence of Guilt* (1959) § 2.07, p. 66; *McCormick, Evidence* (1954) § 127, p. 267; *State v. Harriott,* 248 *Iowa* 25, 79 *N. W.* 2d 332 (*Sup. Ct.* 1956); *State v. Blackburn,* 273 *Mo.* 469, 201 *S. W.* 96 (*Sup. Ct.* 1918); *State v. Allison,* 116 *Mont.* 352, 153 *P.* 2d 141 (*Sup. Ct.* 1944); cf. *United States v. Shotwell Mfg. Co.,* 225 *F.* 2d 394 (7 *Cir.* 1955), remanded for other reasons 355 *U. S.* 233, 78 *S. Ct.* 245, 2 *L. Ed.* 2d 234 (1957). This view is stated in *Rule* 38 of the Uniform Rules of Evidence and *Rule* 232 of the Model Code of Evidence and is described in both as being the existing law. It has since been adopted by § 30 of *chapter* 52, Laws of 1960.

The second subsidiary question is whether our holding conflicts with *N. J. S.* 2A:131–5 which provides that if a person has made contrary statements under oath, it shall be sufficient to allege in the alternative that one or the other is false; that proof of both statements is *prima facie* evidence that one or the other is false; and it shall be sufficient to convict if the jury shall find beyond a reasonable doubt that one statement or the other was false and willful. More specifically the question is whether our holding "repeals" the statute in that the testimony compelled over the claim of privilege could not be used to show falsity in the earlier testimony and hence the cited section could not be invoked to deal with contrary statements. The answer is that we merely give effect to the statutory privilege. The Legislature having ordained the privilege, we would defeat its will if we subjected the witness to the involuntary self-condemnation which the Legislature has forbidden. We must reconcile the statutory privilege with the statutory crime. The proper adjustment is the one we have made. The alternative would be to say the Legislature intended the privilege to fail completely because the court could not detect a basis for it when it was advanced. We cannot impute to the Legislature a result so arbitrary. This conclusion is fortified by § 30, *chapter* 52 of the Laws of 1960 to which we referred above,

which precludes the use of a statement if disclosure was erroneously required.

The last subsidiary question relates to the plight of the witness if he should be charged with perjury in testimony he is compelled to give. That a witness under such compulsion must testify truthfully upon the pain of punishment we do not doubt. See *Commonwealth v. Turner*, 98 *Ky.* 526, 33 *S. W.* 88, 89 (*Ct. App.* 1895) ; *State v. Faulkner*, 175 *Mo.* 546, 75 *S. W.* 116, 137–138 (*Sup. Ct.* 1903) ; *State v. Lehman*, 175 *Mo.* 619, 75 *S. W.* 139, 142 (*Sup. Ct.* 1903). If the State should charge perjury in that testimony, his earlier statements would be admissible in support of the charge. The question is whether it is unfair to expose the witness to the attendant risk. We think it is not.

The postulate of course is that the witness claims that if compelled to testify he will respect his oath but fears his prior falsehood may ultimately be accepted as the truth. We start with the obvious proposition that a witness may not refuse to answer because although he will tell the truth a jury may later conclude he did not. The hypothetical witness would fare no better if he added to his plea the additional circumstance that other witnesses differ with his version of the events. The answer would remain the same if the witness had theretofore made false extra-judicial statements orally or in writing. We think it equally clear that unfairness does not appear merely because the earlier false statement was under oath in a prior proceeding. The right of litigants to a just result cannot yield to the predicament a witness foolishly creates for himself. If on a charge of perjury in his compelled testimony he is confronted with his prior handiwork, he must hope the jury will believe that what he says was improvident was no more than that. And of course he will be aided by the burden placed upon the State to prove beyond a reasonable doubt that the perjury resided in the later rather than in the earlier testimony.

## C.

The remaining issue is whether the trial court erred in refusing to hear counsel for Mrs. Hansen. In her brief, she argues that the moment the assistant prosecutor moved that she be adjudged in contempt an independent criminal proceeding was launched against her, and that thereupon she had a right to representation by counsel. The record reveals that her attorney first sought to speak immediately after the court orally adjudged her in contempt. The court refused to hear him on the question of her guilt.

Appellant does not contend that she was constitutionally entitled to counsel in her role as a witness. *Cf. Re Groban,* 352 *U. S.* 330, 77 *S. Ct.* 510, 1 *L. Ed.* 2d 376 (1957); *Anonymous v. Baker,* 360 *U. S.* 287, 79 *S. Ct.* 1157, 3 *L. Ed.* 2d 1234 (1959). Rather, as we have stated, the right is claimed to have arisen after her claim of privilege was overruled and she refused to comply with the direction to answer. Unlike *Ex parte Hudgings,* 249 *U. S.* 378, 39 *S. Ct.* 337, 63 *L. Ed.* 656 (1919) and *Re Oliver,* 333 *U. S.* 257, 68 *S. Ct.* 499, 92 *L. Ed.* 682 (1948), the contempt was not based upon a finding of falsity in testimony given but rather was a present obstruction from a refusal to answer at all. A contempt of that character in the actual presence of the court could be adjudged summarily. *Van Sweringen v. Van Sweringen,* 22 *N. J.* 440, 447 (1956). No authority is cited to support the claim that the disposition of such a contempt committed during the trial of a cause must be attended by all the rights constitutionally assured to a defendant in a criminal cause. We do not believe the right to counsel is constitutionally assured.

This of course does not mean that a court in a proper exercise of discretion should always refuse an opportunity for representation. On the contrary, if circumstances reasonably allow, counsel should be permitted both to advise the witness and to assist the court in passing upon a claim

of privilege. Whether the circumstances here warranted that course we need not consider for the reason that no claim of prejudice is made. It is not suggested that Mrs. Hansen would have altered her stand if counsel had been permitted to speak. In fact, she and her counsel fully anticipated the situation precisely as it developed. Upon the first argument before us of the appeal from her conviction for refusal to testify before the grand jury, her attorney stated she would take the same position if thereafter called at the murder trial. In short, counsel sought only to reiterate a legal argument theretofore advanced and here renewed. In these circumstances, we can see no possible harm.

We conclude accordingly that (1) the conviction for contempt for refusal to answer before the grand jury is reversed with directions to enter a judgment for appellant; and (2) the conviction for contempt for refusal to answer at the trial of the murder indictment is affirmed.

JACOBS, J., concurring in result.

*For modification*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*Opposed*—None.