THE NORTH CAROLINA STATE BAR, COMPLAINANT, v. REGINALD LEE FRAZIER, ATTORNEY AT LAW, NEW BERN, CRAVEN COUNTY, NORTH CAROLINA, RESPONDENT.

(Filed 22 March, 1967.)

**1. Attorney and Client § 9—**

The North Carolina State Bar has jurisdiction to institute proceedings against an attorney for unethical conduct constituting a basis for disbarment or suspension of license, and has authority to review the proceedings of the trial committee appointed pursuant to G.S. 84-28(3)d2. Upon appeal by the attorney from the Full Council of the State Bar, the Superior Court of the county of the attorney's residence has jurisdiction to review the order in accordance with the laws and rules relating to civil actions in which there has been a reference by consent. G.S. 84-28(3)f.

**2. Same—**

The Council of the State Bar may initiate proceedings against an attorney for disbarment or suspension of license upon information of unethical conduct received from any source, and it is not required that its proceedings be based upon complaint of a client defrauded by the attorney.

**3. Same;  Constitutional Law § 20—**

In this proceeding by the State Bar against an attorney for alleged unethical conduct, the attorney demanded the minutes of the Bar in regard to complaints and actions taken by the Bar in other cases in order to support his assertion of racial discrimination in disciplinary action taken by the Bar. *Held:* The denial of the request was not error since the inquiry is whether the respondent is guilty of unethical conduct, and whether others had or had not been guilty of unethical conduct cannot be germane to respondent attorney's rights.

**4. Attorney and Client § 9—**

A respondent attorney may not object to the refusal to strike allegations of the complaint against him which are relevant and competent in stating the position of the Bar Council and informing the respondent of the charges against him.

**5. Same;  Evidence § 19—**

In a civil action by the payee of a note against the makers and the payee's attorney, the payee recovered judgment against her attorney for funds paid by the makers to the attorney, which funds were not turned over by the attorney to the payee. The payee died prior to the hearing of the trial committee of the State Bar. *Held:* Both the civil action and the proceedings before the trial committee were based upon the alleged withholding of the money of his client by the attorney, and testimony of the payee at the civil action was properly admitted in the proceedings before the trial committee.

**6. Attorney and Client § 9—**

In this proceeding against an attorney for alleged unethical conduct, the evidence *is held* amply sufficient to support findings that the attorney, during the pendency of an action, communicated with one of the litigants

who was represented by other counsel and made a tape recording of his conversation with her without her knowledge, in violation of Canon No. 9 of the Canons of Ethics of the State Bar.

**7. Same—**

On an appeal to the Superior Court by an attorney from disciplinary action taken by the State Bar, the Superior Court is required to consider the evidence and make its own findings of fact and conclusions of law, and the attorney who has appealed and thus sought the review may not complain that the penalties imposed by the judgment of the Superior Court were in excess of those ordered by the State Bar Council, the penalties being well within those authorized by statute.

**8. Same—**

An attorney may not avoid responsibility for retaining without lawful excuse money belonging to his client on the ground that he was inexperienced in the legal profession, since the matter relates to honesty rather than competency.

APPEAL by respondent at October 1966 Civil Session of CRAVEN Superior Court, before *Mintz, J.*

At the October 1963 Session of the Superior Court of Craven County an action was tried, entitled as follows:

"*James Henry White and wife, Wealthy White, v. Hattie Mc-Carter, Reginald L. Frazier, Individually, and Reginald L. Frazier, Trustee.*"

In it the plaintiffs had alleged that they purchased a piece of property from Mrs. Hattie McCarter for $1250, of which $250 had been paid at the time of the conveyance and the balance of $1000 was secured by a note and deed of trust. The respondent acted as defendant's attorney throughout the transaction, named himself trustee in the deed of trust, and his name was inserted in the note as co-payee with Mrs. McCarter. The plaintiffs alleged that they had made 13 payments of $50 each to Frazier, and that the balance was then $350. They further alleged that they had sought to obtain cancellation of the deed of trust upon payment of $350, and that Mrs. McCarter had refused to accept it. The action was brought to obtain cancellation of the deed of trust upon that payment.

Mrs. McCarter in her answer denied that the plaintiffs had made the payments claimed and in a cross-action asserted that if the payments had been made to Frazier he had failed to account to her for them, and sought judgment over against him for the amount received by him. Frazier denied receiving the payments alleged, and at the trial the jury answered the issues quoted below as follows:

"Was the defendant, Reginald L. Frazier, acting as attorney and agent of the defendant, Hattie McCarter, in connection with the sale of the lots in question to the plaintiffs, and the collection of the money therefor? Answer: Yes.

"In what amount, if any, are the plaintiffs White indebted to the defendant Hattie McCarter? Answer: $350.00.

"In what amount, if any, is the defendant Hattie McCarter entitled to recover of the defendant Reginald L. Frazier on her cross-action and counterclaim, as alleged? Answer: $428.00."

Judgment was signed upon the verdict and the defendant Frazier appealed to the North Carolina Supreme Court. The judgment was affirmed as reported in 261 N.C. 362, 134 S.E. 2d 612.

The North Carolina State Bar received information about the case and instituted this action against Frazier seeking appropriate punishment for his alleged unethical and improper conduct. The lengthy complaint setting forth the above facts with full details and with exhibits appended which included the note, the deed of trust, and an alleged tape recording of a conversation between Respondent Frazier and Mrs. McCarter was served upon him. The complaint was verified by E. L. Cannon, Secretary of the North Carolina State Bar.

Frazier filed an answer partially admitting and partially denying the allegations of the complaint, and setting out as defenses his lack of experience in the practice of law; that the transaction in which he drew the note and deed of trust occurred when he had been practicing law less than six months; that his name had been placed in the note by his secretary and without his knowledge; that he immediately remitted to Mrs. McCarter each payment made by the Whites, which totaled $650.00, but that Mrs. McCarter had failed to give him receipts for the payments made to her; that the action of the State Bar was due to the ill will of the Secretary of the Bar toward him and "is a personal vendetta solely by reason of the ill will which the Secretary harbors against this Respondent". He later filed a motion to quash or dismiss the proceeding by reason of racial discrimination.

Respondent requested that a trial committee be appointed by the Supreme Court pursuant to G.S. 84-28(3)d2. A committee of three highly respected attorneys, one of whom was a member of the respondent's race, was appointed by the Chief Justice, who heard the evidence in the case. In the civil action Mrs. McCarter had testified *under oath* and *was cross-examined* by Frazier's attorney (Frazier being *present* at the time) that she got $23 through Frazier three or four times, and $50 three or four times, and that she

never received any money directly from the Whites. The Committee reported their findings with appropriate details, concluding as a matter of law that the respondent is guilty of corrupt or unprofessional conduct. They thereupon unanimously ordered that Frazier be suspended from the practice of law for a period of 12 months.

Frazier appealed to the Full Council of the State Bar which, after considering the evidence, briefs, and oral argument, overruled the respondent's exceptions to the significant findings of fact made by the Committee, made full findings of fact and held that the respondent was guilty of unethical conduct, and ordered that he be given a reprimand by the Council of the North Carolina State Bar at such time and place so designated by the Council, and that respondent pay the cost connected with the proceeding.

The respondent filed exceptions to the Resolution of the Council and appealed to the Superior Court of Craven County.

The appeal was heard in Superior Court by Hon. Rudolph Mintz, presiding Judge, at the October 1966 Civil Session of Craven Superior Court. It was heard on the full record of the previous proceedings before the Trial Committee and the Council and respondent's exceptions and assignments of error thereto, and upon the briefs and argument of counsel for Complainant and Respondent.

Judge Mintz made full findings of fact which in effect approved and affirmed the findings previously made by the Committee of the State Bar Council and concluded as a matter of law that the respondent is guilty of corrupt or unprofessional conduct in the following particulars:

"(a)    That the Respondent did detain without a bona fide claim thereto, money collected in his capacity as attorney for Hattie McCarter in the sum of $428.00, contrary to the provisions of G.S. 84-28(2)b.

"(b)    That the conduct of Respondent in conferring with Hattie McCarter, done without the permission or knowledge of her then counsel, and recording without her permission or knowledge, the conversation, during the pendency of the aforesaid Civil Action No. 7954, was reprehensible, inexcusable, and in violation of the Canons of Ethics, and more particularly Canon 9 as promulgated and adopted by the Council of the North Carolina State Bar, and a flagrant violation of his oath as an attorney."

The Court thereupon ordered that the respondent be suspended from the practice of law for a period of 12 months for his corrupt and unprofessional conduct in detaining without a bona fide claim thereto money collected in his capacity as attorney for Hattie McCarter; and also that he be suspended from the practice of law for a period of six months for his corrupt and unprofessional conduct

in violating Canon 9 of the Canons of Ethics of the North Carolina State Bar, the said suspensions to run concurrently, and that the respondent pay the costs.

The defendant noted exceptions to Judge Mintz' findings of fact, conclusions of law and judgment, and thereupon appealed to the Supreme Court.

*Robert D. Rouse, Jr., for Complainant appellee.*

*Mitchell & Murphy, Moses Burt, Jr., Herman L. Taylor, John H. Wheeler, J. LeVonne Chambers, Lisbon C. Berry, Jr., Earl Whitted, Jr., Charles Morgan, Jr., for Respondent appellant.*

PLESS, J.   G.S. 84-28 in pertinent part is as follows:

"Discipline and Disbarment. — The council or any committee of its members appointed for that purpose, or designated by the Supreme Court,

(1)   Shall have jurisdiction to hear and determine all complaints, allegations, or charges of malpractice, corrupt or unprofessional conduct, or the violation of professional ethics, made against any member of the North Carolina State Bar;

(2)   May administer the punishments of private reprimand, suspension from the practice of law for a period not exceeding twelve months, and disbarment as the case shall in their judgment warrant, for any of the following causes:

a.   Commission of a criminal offense showing professional unfitness;

b.   Detention without a bona fide claim thereto of property received or money collected in any fiduciary capacity;

c.   Soliciting professional business;

d.   Conduct involving willful deceit or fraud or any other unprofessional conduct;

e.   Detention without a bona fide claim thereto of property received or money collected in the capacity of attorney;

f.   The violation of any of the canons of ethics which have been adopted and promulgated by the council of the North Carolina State Bar."

The Canons of Ethics of the North Carolina State Bar, Art. X, Canon 9, is as follows:

"A lawyer should not in any way communicate upon the subject or controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel. It is incumbent upon the lawyer most particularly to avoid everything that may tend to mis-

STATE BAR *v.* FRAZIER.

lead a party not represented by counsel, and he should not undertake to advise him as to the law."

The respondent was found guilty of violating both the above, and appropriate punishment has been ordered. He groups his exceptions and assignments of error under five arguments.

The first is that the proceedings were at all times unlawful and in excess of the jurisdiction of the North Carolina State Bar and the Craven County Superior Court. However, the provisions quoted above give the State Bar jurisdiction in such cases and provide for punishment.

G.S. 84-28(3)f provides that an appeal from the proceedings and judgment of the Council may be had to the Superior Court of the County in which the person charged resides if he resides within the State, and that "all proceedings in connection with the charge shall be conducted in the Superior Court in term in accordance with the laws and rules relating to civil actions in which there has been a reference by consent, but neither party shall be entitled to a trial by jury. Both parties shall have the right to appeal to the Supreme Court in accordance with the procedure permitting appeals in civil actions".

This argument and the exceptions relating thereto are not sustained.

He complains that no layman, and especially the person whom he defrauded, if the jury verdict is correct, made any complaint against him. This is not required. The object of the regulations is to protect the public from unethical conduct by one vested with an attorney's license. A well educated lawyer, whose position and achievement bring trusting persons to his office in a search of guidance and protection has the duty of conducting himself with the highest degree of honor, integrity and ethics. The duty of patrolling the conduct of licensed attorneys is placed on the Council of the State Bar, and there are no requirements that it shall be limited to any particular source for its information or instigation of proceedings.

Further complaint is made that the respondent was denied the right to freely inspect, use and study the minutes of the Grievance Committee of the Bar. He was offered the right to inspect the minutes as they related to him, but he replied that "If we cannot have *all* (emphasis ours) the minutes, we do not care to see what we have before us".

On several occasions the respondent's attorneys asked for the minutes "in order that we could compare what was done in Mr. Frazier's case and what was done in the other cases".

At another time they said: "We want to see what disciplinary

actions were taken on that date; what type of actions were taken; who the names of the attorneys were, and so that we can inquire what the bases of them is so we can determine whether or not Frazier is being accorded the same protection and the same treatment as any other lawyer."

Also they said: "We have alleged that this man is seeking equal protection of the laws and the equal treatment and the comparison of the treatment of this defendant with other defendants who were discussed at the time of the Bar meetings."

In response to these motions and statements, counsel for the Bar tendered certified copies of the minutes as they relate to Frazier and stated that in his opinion he would not have legal authority to provide the respondent with certified copies of the minutes in their entirety. He said: "It may be that you do have the right to examine the contents of those records in their entirety; if so, I would not want to voluntarily agree. I would prefer that you have an appropriate subpœna *duces tecum* issued and that an appropriate court official order the contents of those minutes disclosed * * * I will now offer to permit a representative of your counsel to examine those minutes as they relate to your client." The respondent declined the offer and did not pursue the suggestion that he seek a subpœna *duces tecum*.

It is possible that the minutes contained references to other complaints against other attorneys, some of which may have been justified. Others may not have been, which would prove nothing. The question here is: Has the *respondent* been guilty of unethical conduct? That others have, or have not been, cannot change the guilt or innocence of Reginald Lee Frazier.

The respondent also excepts to the refusal to strike a number of allegations in the complaint against him. A careful perusal of all of them shows that they are relevant and competent in stating the position of the Bar Council and in informing the respondent of the charges against him.

Argument IV of the respondent's brief relates to "Reception in evidence of hearsay evidence pertaining to a civil action in which parties, issues and proceedings are dissimilar" to those in the instant case. While the parties are not technically the same, the inquiry is entirely based on the alleged unethical conduct of the respondent in his dealings with his aged and illiterate client, Mrs. Hattie McCarter. So was the civil action in which he was found by the jury to have withheld the money of his client while acting as her agent and attorney.

Mrs. McCarter died after the trial of the civil case and before the hearings of the Committee. Her evidence at the trial is clearly

admissible in this proceeding. It meets all the requirements so clearly and concisely stated in Stansbury on Evidence, 2d Ed. Sec. 145, regarding "the testimony of a witness at a former trial or other judicial hearing (which) may be given in evidence at a subsequent trial, whether civil or criminal, if it complies with all of the following conditions:

"(1)   If the witness has since died, or become incapacitated by insanity or illness, or has removed from the jurisdiction or has otherwise become unavailable to testify as a witness at the present trial.

"(2)   If the proceeding at which he testified was a former trial of the same cause, or a preliminary stage of the same trial, or the trial of another cause involving the same issue and subject matter as the one to which his evidence is directed at the present trial.

"(3)   If the parties at the former trial were the same as those at the present trial, or in privity with them, or if the situation was such that the party against whom the evidence was then offered had the same opportunity and motive to cross-examine the witness as the party against whom it is now offered has at the present trial."

In view of this we hold that the other features of the respondent's argument IV necessarily fail.

In argument V the respondent largely recapitulates and repeats the foregoing conditions, all of which have been considered and rejected.

The respondent's violation of Canon 9 is hardly contested. He admitted that, while the civil action was pending and Mrs. McCarter was represented by other counsel, he not only "communicated upon the subject or controversy", but made a tape recording of his conversation with her, without her knowledge.

Frazier testified that she came to his office after the civil action had been instituted for her by the firm of Ward & Ward, attorneys of New Bern, and that he discussed the case with her. From the recording it is seen that he told Mrs. McCarter that "We have got to get the Whites straightened out about those lots"; that Mrs. McCarter said she had not received the money that the Whites claimed they had given her — "they have not give me the money". He asked her if she believed they had hoodwinked her into something, to which she replied that she knew they did, and that she had told Frazier they "would hoodoo him". She also said that Frazier had authority to receive the money for her; that he was her lawyer; that the Whites were supposed to pay Frazier the money and he was supposed to bring it to her, and that he did. Frazier asked her the following question: "I just wanted to establish that

you came to me and hired me as your lawyer to go by and pick up the money for you and that I would bring the money to your house when I picked it up when they did pay me?" She answered: "When they did pay and give it to you." (It also appears that Frazier communicated with her at another time in regard to the matter).

The Secretary of the Bar testified, without objection, that after the civil trial of *White v. McCarter* "I talked to Hattie McCarter and she advised me that everything she stated was true and that Frazier had taken her money and, further, that he had been to see her and that he had asked her not to do anything in connection with this, and he said he was going to lose his license and that he was going to New York".

Judge Mintz made full and complete findings which in effect approved and affirmed the findings and conclusions of the State Bar Council, and made additional findings as follows:

"IX. That Reginald Lee Frazier detained without a *bona fide* claim thereto money in the sum of $428.00 belonging to Hattie McCarter and collected in his capacity as attorney.

"X. That the Respondent violated the laws of the State of North Carolina, and specifically G.S. 84-28(2)b in the collection and retaining of the sum of $428.00 for Hattie McCarter in his capacity as attorney.

"XI. That the Respondent violated the Canons of Ethics which have been promulgated and adopted by the Council of the North Carolina State Bar, and specifically Canon No. 9 in conferring with Hattie McCarter during the pendency of the aforesaid Civil Action No. 7954.

"That upon the foregoing findings of fact, and the evidence offered in this proceeding, the Court concludes as a matter of law that the Respondent is guilty of corrupt or unprofessional conduct in the following particulars:

"(a)   That the Respondent did detain without a *bona fide* claim thereto, money collected in his capacity as attorney for Hattie McCarter in the sum of $428.00 contrary to the provisions of G.S. 84-28(2)b.

"(b)   That the conduct of Respondent in conferring with Hattie McCarter, done without the permission or knowledge of her then counsel, and recording without her permission or knowledge, the conversation during the pendency of the aforesaid Civil Action No. 7954, was reprehensible, inexcusable, and in violation of the Canons of Ethics, and more particularly Canon 9 as promulgated and adopted by the Council of the North Carolina State Bar, and a flagrant violation of his oath as an attorney."

He thereupon adjudged that Frazier be suspended from the practice of law for a period of 12 months "for his corrupt and unprofessional conduct in detaining without a *bona fide* claim thereto money collected in his capacity as attorney for Hattie McCarter", and that he be suspended from the practice of law for 6 months "for his corrupt and unprofessional conduct in violating Canon 9 of the Canons of Ethics of the North Carolina State Bar"; with the suspensions to run concurrently and the respondent pay the costs.

The respondent's complaint that the judgment of Judge Mintz in which the punishment from which he had appealed was greater than that imposed by the Council cannot avail him.

Since the statute provides that the proceedings in the Superior Court shall be in accordance with the laws and rules relating to civil actions in which there has been a reference by consent, the Judge may "affirm, amend, modify, set aside, make additional findings, and confirm, in whole or in part, or disaffirm the report of a referee. * * * It is the duty of the judge to consider the evidence and give his own opinion and conclusion, both upon the facts and the law. He is not permitted to do this in a perfunctory way, but he must deliberate and decide as in other cases, use his own faculties in ascertaining the truth, and form his own judgment as to fact and law." *Anderson v. McRae*, 211 N.C. 197, 189 S.E. 639.

The suspension was within the penalties authorized by the statute and the respondent was ill-advised in appealing from a mere reprimand in view of the overwhelming evidence of his misconduct. Under the statute and all of the decisions, when one appeals or obtains a new trial he runs the risk of loss as well as gain. In *S. v. White*, 262 N.C. 52, 136 S.E. 2d 205, the defendant was convicted of robbery and was sentenced to serve ten years. He later was granted a new trial at his request and was again found guilty as charged in the indictment. He was thereupon ordered imprisoned for a term of not less than 12 nor more than 15 years. He took exception to the lengthier sentence in the second case, and Parker, J. (now C.J.), said: "Defendant having been convicted of the same offense on the second trial on the same indictment, a heavier sentence may be imposed than was imposed on the first trial." He quoted from *Hobbs v. State*, 231 Md. 533, 191 Atl. 2d 238, Cert. den., 375 U.S. 914, 11 L. Ed. 2d 153: " 'In asking for and receiving a new trial, appellant must accept the hazards as well as the benefits resulting therefrom.' " We quote further from *S. v. White, supra*, "In *Bohannon v. Dist. of Columbia*, 99 Atl. 2d 647 * * * the Court accurately said: 'We readily appreciate appellant's feeling that the obtaining of a new trial after the first conviction was a hollow victory, since it resulted in a second conviction and a fine

ten times as much as the one first imposed. This, however, was a risk he took, and the second Judge was not bound to impose the same fine given by the first Judge.' "

Later on, Chief Justice Parker said: "When defendant, at his request, obtained a new trial hoping to be set free or obtain a lighter sentence, he accepted the hazard of receiving a heavier sentence if convicted at the new trial of the same identical offense, and this is not a denial to him of any constitutional right as contended by him."

In *S. v. Correll*, 229 N.C. 640, 50 S.E. 2d 717, the defendant was convicted of manslaughter and given a sentence of 3 to 5 years in State Prison. Upon appeal he was awarded a new trial, in which he was convicted of murder in the second degree and received a prison sentence of not less than 7 nor more than 10 years. Upon his appeal he took exception to his conviction of a higher offense and the imposition of a longer prison sentence. The Court overruled these exceptions and affirmed the later judgment.

While the cases cited deal with criminal cases, they are all the more applicable to this case inasmuch as the Court would deal with the imprisonment of a citizen with even more care and consideration than it would give one not involving as great penalty. The Judge was of opinion, and justly so, that the reprehensible conduct, or misconduct, of the respondent justified more severe measures than a mere reprimand and suspended his right to practice law for 12 months. That cannot be called cruel and unusual or unjustified.

The respondent in reply to the charges made against him, in effect, entered a plea of confession and avoidance. While he did not admit his guilt, it was conclusively shown.

However, he seeks to avoid responsibility on the following unimpressive grounds. He claims he was inexperienced and had been practicing law less than six months when he drew the papers for Mrs. McCarter and the payments to him, for her, began. Inexperience in the legal profession cannot excuse what amounts to embezzlement. Dishonesty and breach of trust may be committed by anyone, and no person needs a law license or experience in the practice of law to know that dishonesty and crookedness are wrong.

He cites many authorities on unquestionable (but abstract) statements of the law which cannot be argued or debated. No one would deny that every person is entitled to equal protection of the law, or that one is entitled to confront his accusers, or that hearsay evidence is incompetent and cannot be used to convict.

But the respondent is confronted with the well-recognized principle that it is not difficult to ascertain the law. The difficulty is in applying well established legal rulings to the facts of a particular

case. Therein, the respondent fails. The law he quotes is just not pertinent to the facts of this case, for the reasons we have stated.

He complains that he has been singled out for prosecution; that others have been guilty of unethical conduct who have not been punished or who have not received as severe punishment as did he, and, in effect, because all have not been prosecuted and punished, he should not be.

It is possible that others have not been apprehended, but if in the effort to enforce a high standard of conduct and ethics the Council should be required in each case to show the facts and results in every similar case it had investigated, the inquiry would go on endlessly.

This is equivalent to the position that until all murderers, robbers, and other criminals have been convicted and punished, the remainder, even though their guilt is clearly established, should not be either. The fallacy of this position is apparent from a statement of his contentions.

In his trials the respondent adopted as his tactics the old game of "trying the Solicitor". Upon the theory that the best defense is a good offense the respondent set out to try the State Bar, its Council, its Secretary, and even the completely unconnected North Carolina Bar Association. He should not be surprised that he, rather than they, was tried.

And finally he seeks to establish that he is being persecuted because of his race. Completely ignoring that the object of his dishonesty and greed and the one whom the Court in the civil action protected, was an aged, trusting and uneducated old lady — of his own race!

In the proceedings and judgment below there is no error.

Affirmed.