COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Appellee,

v.

Morris C. HURD, Appellant.

No. 84–1004.

Supreme Court of Iowa.

Dec. 19, 1984.

Rehearing Denied Jan. 10, 1985.

John Stevens Berry, Berry, Anderson, Creager & Wittstruck, Lincoln, Neb., for appellant.

Frank A. Comito, and Hedo M. Zacherle, Des Moines, for appellee.

McCORMICK, Judge.

Respondent attorney Morris C. Hurd appeals from a report of the Grievance Commission finding that he violated the Iowa Code of Professional Responsibility for Lawyers in several respects and recommending that his license be suspended. The appeal presents questions concerning limitations on discovery, the merits of the commission findings, and the issue of discipline. Upon our de novo review, we find that respondent engaged in unethical conduct and that his license should be suspend-

ed indefinitely with no possibility of reinstatement for at least six months.

The main complaint against respondent is that he made false statements in a motion for change of judge filed in an Ida County criminal case on March 29, 1982. Respondent represented Jerald C. Steuk who was scheduled to be tried by jury on the following day on a charge of assault with intent to inflict serious injury. In material part the motion alleged:

1. It was not until Wednesday, March 24, 1982, that the Hon. Richard Cooper, one of the Judges of this Court, set the above-captioned case for trial on Tuesday, March 30, 1982.

2. The Defendant, Jerald C. Steuk, respectfully shows to this Court that he is the Defendant in the above-entitled cause; that he fears that he will not receive a fair and impartial trial in said court if said cause will be tried before the Honorable Richard Cooper, because the Judge is prejudiced against him and against his Attorney, Morris C. Hurd, so that he cannot expect a fair trial by said Judge. Petitioner further shows that said prejudice first came to the knowledge of this Defendant on Wednesday, March 24, 1982.

3. The Honorable Richard Cooper threatened to incarcerate Attorney, Morris C. Hurd, on March 30, 1981, one year ago, when a Motion came on for hearing in the Estate of Charles Bruene, Deceased. Morris C. Hurd had filed a Request to Produce Books or Papers in the Estate of Charles Bruene. More specifically, Morris Hurd, representing 9 of the heirs at law of Charles Bruene, Deceased, asked that McGuire Auction Co., James McGuire, Holstein State Bank and Arnold Putensen produce and permit them to inspect and to copy all bank statements, deposit slips and cancelled checks of McGuire Auction Co. and of James McGuire, during a certain 18 month period. When that matter came on for hearing before the Honorable Richard Cooper on the 30th day of March, A.D. 1981, the Honorable Richard Cooper accused Morris Hurd of grand-

standing and threatened to find Morris C. Hurd in contempt if he pursued such discovery and told Morris Hurd that he would put him in jail. Faced with threats of contempt proceedings and jail, Morris C. Hurd suspended his discovery efforts for several months, but in August, 1981, he did seek and obtained a subpoena for such bank statements, deposit slips and cancelled checks, and that subpoena did produce a check written by McGuire Auction Co., Inc., made payable to "Dick Branco" in the amount of $3722.00, copy of which check is attached hereto and made a part of this Motion. "Dick Branco" was then an Attorney, representing the Executor of the Bruene Estate, but is now one of the Judges in this Judicial District. Laurel L. Boerner, then a partner of "Dick Branco" explained that the check in the amount of $3722.00 was unsolicited, but probably represented a part of the real estate commission paid to McGuire. Patrick Forristal, an employee of McGuire Auction Co., and brother-in-law of James McGuire, testified that the check in the amount of $3722.00 made payable to "Dick Branco" could be splitting of the brokerage fees, and Forristal went on to explain that the McGuire Auction Co. has participated in dividing real estate brokerage fees on a split fee basis with many, many lawyers for more than 25 years last past. Morris Hurd was doing what an Attorney should do for his clients when he was seeking the whereabouts of the Bruene Estate money and in tracing it through the hands of the McGuire Auction Co. to "Dick Branco" and Morris Hurd should not have been accused of "grandstanding," and threatened with contempt and jail.

4. On Wednesday, March 24, 1982, Morris Hurd and Ida County Attorney, Robert Belson, attempted to make a plea bargain agreement to dispose of the above-captioned case by agreement, rather than by its submission to a jury. The Hon. Richard Cooper talked to Morris Hurd and to Robert Belson twice on that

day, once in the Judge's chambers in the Ida County Courthouse, and once in the Magistrate's Courtroom in said Courthouse, asking how said Attorneys were progressing in the plea bargain negotiations. No agreement had been made. Both times, the Honorable Richard Cooper told said Attorneys that it might be helpful for them to know that he intended to incarcerate Defendant, Jerald Steuk, should he be found Guilty of the Crime charged. That threat to incarcerate Jerald C. Steuk was made before any evidence was heard.

5. Because of those threats to jail both Jerald Steuk and his Attorney, Morris C. Hurd, Jerald Steuk is fearful of the prejudice of the Judge against both him and his Attorney, Morris Hurd, and is fearful that he cannot obtain a fair and impartial trial before the Honorable Richard Cooper.

6. There is a substantial likelihood that a fair and impartial trial cannot be had by Jerald Steuk before the Honorable Richard Cooper for all of the reasons heretofore stated.

The motion was signed by respondent and Steuk, and respondent also swore in a verification that the allegations were true and correct.

Judge Cooper did not learn that the motion had been filed until he arrived in Ida Grove to preside at the Steuk trial on the morning of March 30. He had postponed the reporting of the jury from 9:30 to 1:00 p.m. to allow time to address motions for continuance and for discovery filed by respondent on the afternoon of March 26.

In a reported proceeding on March 30 in which county attorney Robert Belson represented the State, statements of counsel established that respondent had taken a deposition of Steuk's estranged wife, prosecutrix in the assault case, on March 27 and that no further discovery was required. Respondent nevertheless asked that the criminal case be continued on the ground that a pending decision in the Steuk dissolution case "might make all these issues moot." He also asked for a continuance

based on the motion for change of judge "to see what other people's responses are." He said, "If anybody thinks the facts I have stated are incorrect, I guess I would like to have an evidentiary hearing on the matter. If they are correct, I wish the court would grant the motion for change of judge and continue the case for a period."

Judge Cooper responded that the motion for change of judge came as a complete surprise to him and that respondent's accusations in the motion were untrue. The judge stated he harbored no prejudice against Steuk whom he had not met until trial of Steuk's appeal of a magistrate conviction of assault in the afternoon of March 24, 1982. That case was still under submission. The judge refused to hold an evidentiary hearing on respondent's charges, stating that the motion revealed a state of mind in respondent that disqualified respondent from trying cases before Judge Cooper and that the merits of respondent's charges could be investigated and heard by the grievance commission. The Steuk case was continued.

The judge subsequently filed a complaint about respondent's conduct with the Committee on Professional Ethics and Conduct of the Iowa State Bar Association, and the present disciplinary proceeding ensued. After investigating the complaint, the committee elected to prosecute it before the grievance commission in accordance with Court Rule 118.2. Extensive discovery was conducted by the committee and by respondent. The complaint was then tried in a bifurcated proceeding. The issue of respondent's alleged misconduct was tried first. Later, when the commission determined that respondent was guilty of misconduct, a separate hearing was held on the issue of discipline. The present appeal followed the commission's report and recommendation that respondent's license be suspended for at least six months because of unethical conduct.

I. *Limitations on discovery.* Through interrogatories and motions for production of documents, respondent obtained all information requested from the committee

except a copy of the report of its investigator and the work product of staff counsel. By order of the grievance commission, respondent was allowed to inspect and copy all other documents in the committee file. In addition the committee provided him with copies of all documents it intended to use in the hearing and names of all persons the committee believed had knowledge of respondent's alleged misconduct. In contending the commission erred in denying him access to the investigator's report and counsel's work product, respondent relies on constitutional grounds and the rules governing discovery in civil cases.

■ Respondent's constitutional attack is based on an alleged infringement of procedural and substantive due process of law under the fourteenth amendment of the United States Constitution and article I, section 9, of the Iowa Constitution. No doubt exists that an attorney is entitled to these protections in disciplinary proceedings. *Committee on Professional Ethics and Conduct v. Michelson*, 345 N.W.2d 112, 115 (Iowa 1984). The applicability of these provisions does not depend on whether disciplinary proceedings are "quasi-criminal" as contended by respondent but arises from "recognition that the potentially serious consequences for the attorney invoke substantial procedural due process protections." *Committee on Professional Ethics and Conduct v. Behnke*, 276 N.W.2d 838, 842 (Iowa), *appeal dismissed*, 444 U.S. 805, 100 S.Ct. 27, 62 L.Ed.2d 19 (1979).

In denying respondent access to the investigative report and staff attorney work product, the commission followed a committee rule established by this court, which provides: "Any such files, except for the work product of staff counsel or investigators of the committee, shall be open to the inspection of the lawyer complained against." Rule of Procedure 2.1(d), Professional Ethics and Conduct Committee. Confidentiality provisions of this kind promote the public interest by assuring a free flow of information for complaint and investigative purposes. *See, e.g., State ex rel. Shanahan v. Iowa District Court*, 356

N.W.2d 523 (Iowa 1984); *Doe v. Iowa State Board of Physical Therapy*, 320 N.W.2d 557, 560 (Iowa 1982). Even in a criminal case a defendant ordinarily does not have a due process right to examine investigative files. *See State v. Groscost*, 355 N.W.2d 32, 37 (Iowa 1984).

Respondent cites cases delineating a criminal defendant's right to exculpatory evidence in the prosecutor's files in arguing he should have been given the investigative report and staff attorney work product in this case. Those cases recognize, however, that dragnet requests for information are correctly refused and that a defendant's right to exculpatory material does not itself establish a right to rummage through the government's file to search for exculpatory material. *See United States v. Agurs*, 427 U.S. 97, 112, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342, 354–55 (1976); *Groscost*, 355 N.W.2d at 37.

■ Although respondent asserts that he encountered hostility when he attempted to obtain information from persons on the list provided by the committee, the record does not show that he was denied any material evidence on that basis or that he could not obtain the information he sought through regular discovery procedures. Even in this appeal respondent merely hypothesizes a factual basis for desiring access to the investigator's report. He argues that if the report contained information showing other lawyers had similar problems with Judge Cooper he could use the information to show Judge Cooper had a habit of being unreasonable with lawyers. The record is devoid of any support for respondent's hypothesis or any reason that respondent could not conduct his own investigation to determine the facts. We conclude that respondent's due process attack on the commission's discovery rulings is without merit.

We reach the same conclusion on respondent's argument under Iowa Rule of Civil Procedure 122(c). We interpreted that rule in *Ashmead v. Harris*, 336 N.W.2d 197 (Iowa 1983). It permits a party to obtain materials prepared by an adverse party in

anticipation of litigation or for trial upon a special showing of "substantial need" and inability "without undue hardship to obtain the substantial equivalent of the materials by other means." The rule does not come into play, however, if the documents are privileged. *Ashmead*, 336 N.W.2d at 200. The investigative report and staff counsel work product are made privileged by committee rule 2.1(d). Respondent was provided access to all nonprivileged committee documents, and rule 122(c) is inapplicable to the remainder.

Respondent cites *Brotsky v. State Bar of California*, 57 Cal.2d 287, 368 P.2d 697, 19 Cal.Rptr. 153 (1962), in support of his argument. That case recognizes a disciplinary board's right to withhold privileged documents. The problem in the case was the California board's failure to identify the privileged documents so that documents subject to discovery could be identified. *See id.* at 303, 368 P.2d at 705, 19 Cal.Rptr. at 161. No such problem exists here because the privileged documents are identified in rule 2.1(d).

Other cases relied on by respondent are distinguishable because they are based on different rules. Moreover, each decision rejects an attorney's challenge to discovery rulings. *See The Florida Bar v. Wagner*, 175 So.2d 33 (Fla.1965) (attorney not entitled to bill of particulars at investigative stage); *North Carolina State Bar v. Frazier*, 269 N.C. 625, 153 S.E.2d 367 (1967) (attorney properly denied access to committee minutes showing disposition of disciplinary proceedings against other attorneys); *In re Disbarment Proceedings*, 321 Pa. 81, 184 A. 59 (1936) (attorney properly denied a copy of testimony of witnesses before investigative committee). These cases do not support respondent's discovery contentions in the present case.

We find no error in the commission's challenged discovery rulings.

II. *The merits of the commission findings.* Respondent attacks all of the findings of the grievance commission and contends the committee did not meet its burden to prove the misconduct alleged. Be-cause our review of the record is de novo, we will recite the facts that we find are established by a convincing preponderance of evidence.

Respondent represented nine heirs in the estate of Charles Bruene. Probate was started in 1974 in the district court in Ida County. The history of litigation in the estate is traced in *Matter of Estate of Bruene*, 350 N.W.2d 209 (Iowa Ct.App. 1984), and will not be repeated here. Objections to the executor's final report by the heirs represented by respondent were pending in early 1981. On February 17, 1981, respondent filed a request for production of documents in the probate file directed to the executor of the estate and several nonparties. The executor, represented by attorney Laurel L. Boerner, and McGuire Auction Company and James McGuire, represented by attorney Thomas L. McCullough, filed written resistances to the request. A hearing on the request was set for March 31, 1981, before Judge Cooper.

The attorneys initially met with the judge in chambers but, upon respondent's request that his clients be present, the hearing was moved to the courtroom. Respondent had led at least one of his clients to believe that the hearing concerned the merits of their objections to the final report. At the outset he pretended not to know who attorneys Boerner and McCullough represented, despite having copies of their written resistances to the request for production. Then respondent commenced an argument in which he attempted to address the merits of the objections to the final report rather than the merits of his discovery request. Judge Cooper repeatedly admonished him to limit his argument to the issue before the court.

Attorneys Boerner and McCullough argued their resistances, asserting that the objectors could not use Iowa Rule of Civil Procedure 129(a) as a means for obtaining documents from nonparties. Respondent then commenced a rebuttal argument in which he again attempted to address the merits of the objections to the final report. Judge Cooper called respondent and other

counsel to the bench. He accused respondent of "grandstanding" in an effort to impress his clients, admonished him for ignoring the court's directions to argue only the discovery issue, told him he was on thin ice with respect to contempt, and announced that the remainder of the hearing would be reported.

A transcript of the remainder of the hearing includes the following:

THE COURT: Let the record show in Probate No. 5773 that the Court has been hearing arguments in support of and in opposition to certain parties' application to produce books and records; that Mr. Hurd, representing those parties, has now commenced a rebuttal argument and, after a caution by the Court not to get outside of the issue that's before the Court, seems to wish to argue with the Court.

So from here on, Mr. Hurd, you're going to be on the record. And I again warn you, on the record, that the only issue before this Court is your application for production of books and records and your legal authority for such application.

MR. HURD: Okay.

THE COURT: And this Court is not in any position and you're doing a disservice to your clients to make them think this Court is in a position to listen to any of the merits in this case. That's for some time in the future. You're at this time warned not to depart from any of the legal issues before this Court.

MR. HURD: Of course, your Honor, I made an opening statement. Then they responded to me, and I'm only trying to respond to new matters; and I'm trying to do it in good faith. And if I say anything the Court doesn't care for, I hope the Court points that out to me.

THE COURT: Don't you worry, I will.

MR. HURD: Hmm. I suppose—You know, I think we're entitled to discovery. Our rules of discovery are very broad and are to be construed liberally. That's the way we see cases that deal with discovery. I suppose those people should come in here, then, and state why we shouldn't have discovery.

My clients want to discover where their assets are. Laurel Boerner said that we're on a fishing expedition and that we're harassing people; and of course, I deny both of those. Now, I guess maybe I'm sorry that I used the word "suspected," and I would like to ask permission to amend my application, saying that those nine people that I represent have probable cause to think that Jim McGuire now has or did have assets that belong to the estate.

I think, from what you've heard already, almost everybody agrees that he has received $11,600 for some sort of a fee.

THE COURT: Mr. Hurd?

MR. HURD: Yes.

THE COURT: You're getting into these merits again, and this is the last time I'm going to warn you. And, I'm not allowing an amendment at this time, after the arguments have been presented to the Court. You're stuck with what you've already filed. If you have anything further to say, go ahead and say it.

MR. HURD: I would like to point out that the court of appeals did not say that my allegations are illusory, reckless and made in bad faith; and one of the reasons I had to take an appeal to the court of appeals is because such accusations were made to me by a trial judge, and I had to have a finding that that wasn't true. This sort of language has been leveled at me for the last several years, and it's not true, and it's still not true.

Respondent offered testimony of three of his clients and the daughter of another client in an effort to present a different version of these events. Only two of these witnesses testified inconsistently with our findings, and one of them is impeached by the partial transcript. We do not find their testimony to be credible.

Sometime after the hearing, before Judge Cooper ruled on the request for production, respondent notified him the matter

had been worked out, and no ruling was necessary.

In the months subsequent to the hearing, respondent tried two cases before Judge Cooper without incident. He did not challenge the judge's impartiality, and he was not dissatisfied with the outcome of the cases.

In February 1982, however, respondent raised Judge Cooper's name in asking help from Ida county attorney Robert Belson in the disposition of three assault charges against Jerald C. Steuk. One of the cases was an appeal from a magistrate conviction of simple assault, and the other cases were aggravated misdemeanor charges of assault with intent to commit serious injury. *See* Iowa Code § 708.1 and .2 (1981). All of the cases arose from alleged attacks by Steuk on his estranged wife Rita. The couple's dissolution action had been tried to Judge Richard F. Branco and was pending decision. Judge Cooper's name was mentioned by respondent in the context of a request for "help" with the cases because "wildman Cooper" was scheduled to preside at the next trial session in Ida County. Respondent did not want to try the cases before Judge Cooper.

Belson and respondent discussed the cases at the Ida County courthouse on March 23, 1982, a day on which informal pretrial conferences were held by Judge Cooper to determine what criminal cases should be put in the trial assignment for the trial session starting the following week. The State took the position that all three Steuk cases were ready for trial. Respondent argued that the three cases should be dismissed because they arose from domestic disputes. Because the county attorney insisted that the cases would be prosecuted, Judge Cooper placed them in the trial assignment. The magistrate appeal was set for trial for the next afternoon and one of the other cases was set for jury trial on March 30, 1982. Respondent acquiesced in the assignment and pretrial orders were entered in the two aggravated misdemeanor cases. The court found that no motions were pending, none were antici-

pated, and the cases were ready for trial. A plea bargain deadline of 3:00 p.m. on March 25, 1982, was fixed.

Additional discussions between Belson and respondent occurred in the magistrate courtroom at the courthouse on March 24, 1982, when the parties appeared for trial of the magistrate appeal. Judge Cooper entered the courtroom during the discussions to inquire about the status of the discussions. At that time he asked respondent if his client was aware that a judge would be hard pressed to avoid sentencing a person to some type of incarceration upon conviction of crimes like those facing him. Belson and respondent discussed the possibility with Judge Cooper of defendant pleading guilty in the cases but receiving probation. The judge said he would honor a plea bargain of that nature. Belson said he wanted Rita Steuk's approval before agreeing to the bargain. When he presented the issue to her she stated her opposition to any plea bargain that would preclude incarceration. Because no agreement could be reached, the parties proceeded to trial of the magistrate appeal. Judge Cooper took the case under submission and planned to start trial of the first Steuk jury case on the morning of March 30, 1982.

On March 26, 1982, respondent filed motions for discovery and for continuance in the case set for trial on March 30. In his discovery motion he asked for copies of any statements or documentary evidence in the State's possession, for a copy of Steuk's criminal record, and for the right to inspect any physical evidence held by the State. In his motion for continuance he alleged he had not had sufficient time to prepare for trial, that motions were on file that were not ruled on, and that a decision in the dissolution case would make trial of the criminal cases moot.

When Judge Cooper arrived in Ida Grove on the morning of March 30 to hear the motions for discovery and continuance, he learned of the motion for change of judge which had been filed shortly after noon the day before. We have already recited the events of March 30.

The allegations by Jerald C. Steuk in the motion for change of judge were based entirely on information provided to Steuk by respondent. Moreover, the motion was verified by respondent, not by Steuk. In the verification, respondent stated under oath that he read the motion, knew its contents, and that the statements and allegations were true. Of course, his signature on the motion alone constituted a certification that good grounds existed for the claims in it and that it was not interposed for delay. *See* Iowa R.Civ.P. 80(a).

Respondent made a number of palpably false statements in the motion. One is his assertion that Judge Cooper threatened to incarcerate him during the March 1981 Bruene estate hearing. At most the judge warned respondent that his conduct bordered on contempt. Respondent engaged in an unwarranted and gratuitous interpolation of this admonition when he characterized it as a threat to incarcerate him.

Respondent's statement in the motion that Judge Cooper "threatened to find Morris C. Hurd in contempt if he pursued such discovery and told Morris Hurd that he would put him in jail" is also false. This statement is an obvious conversion of the judge's admonition that he confine his argument to the legal issue in the discovery hearing into a threat to jail the attorney for doing exactly that. We find no basis in the record, even under respondent's evidence, to support a good faith belief on his part that Judge Cooper threatened him for pursuing discovery. Respondent's additional statement that such threats caused him to suspend discovery for several months is also obviously false. Furthermore, respondent's self-righteous recital of what his discovery disclosed is no justification for his pretending that he was admonished for pursuing discovery when he knew he was admonished only for arguing issues not related to his discovery request.

This pattern of falsification and distortion is continued in respondent's characterization of Judge Cooper's comments during the Steuk plea discussions. The judge did not threaten to incarcerate Steuk. He merely sought an assurance that respondent had advised his client of the risk of incarceration upon conviction of crimes of violence like those with which Steuk was charged. Respondent's allegation that Steuk could not get a fair trial before Judge Cooper is based on his false statements and therefore is also false.

We agree with the commission that respondent violated Iowa Code section 610.14(1) and (3), Disciplinary Rule 1–102(A)(4), (5), and (6), and Disciplinary Rule 7–102(A)(5).

Section 610.14(1) provides that an attorney must "maintain the respect due to the courts of justice and judicial officers." False accusations against judges harm the courts as institutions. By making false and reckless statements about Judge Cooper, respondent violated this statute. *See Committee on Professional Ethics and Conduct v. Horak*, 292 N.W.2d 129 (Iowa 1980).

Section 610.14(3) requires an attorney "[t]o employ for the purpose of maintaining the cause confided to him, such means only as are consistent with truth, and never to seek to mislead the judges by any artifice or false statement of fact or law." Attorneys, as officers of the court, have a special responsibility to protect the integrity of the judicial process. By seeking to help his client through false accusations in his motion for change of judge, respondent breached this statutory duty.

The same conduct also breached DR 1–102(A)(4), (5) and (6), which prohibit an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, or that is prejudicial to the administration of justice, or that adversely reflects on the attorney's fitness to practice law. Respondent's conduct cannot be defended as zealous representation of his client. The disciplinary rules set boundaries within which zeal must be confined. One of those boundaries is that in representing a client an attorney shall not "[k]nowingly make a false statement of law or fact." DR 7–102(A)(5). Respondent

crossed this boundary several times in his motion for change of judge.

The misconduct in this case stems not from the use but the misuse of the motion. Iowa Rule of Criminal Procedure 10(9) specifies the manner in which a party may seek a change of judge based on the judge's prejudice against the party. We have defined this prejudice by saying: "The prejudice contemplated is not merely a belief as to the guilt or innocence of the defendant, but the presence of such a state of feeling as will incline the judge against the defendant in his rulings and instructions on the trial." *State v. Williams*, 197 Iowa 813, 816, 197 N.W. 991, 993 (1924). When a motion for change of judge is made, the judge should hear the evidence and arguments, consult his or her feelings, consider the showing made, and grant or deny the change "in the exercise of careful discretion." *Id.* The problem here is not the filing of the motion but the making of statements in it that respondent knew were false.

Respondent faults Judge Cooper for not hearing evidence and ruling on the motion. The judge's reaction to the motion cannot excuse respondent's antecedent misconduct. Because the judge believed the motion was dishonest on its face, he peremptorily referred the issue to the ethics committee. While the rules of procedure contemplate regular submission and ruling on the motion, respondent's misconduct is not mitigated by the judge's subsequent failure to follow those procedures.

As a separate line of defense respondent seeks to justify his false statements on free speech grounds. He alleges that all of the ethical standards he is accused of violating are vague and overbroad in violation of the first and fourteenth amendments of the United States Constitution.

■ We rejected a vagueness challenge in analogous circumstances in *In re Frerichs*, 238 N.W.2d 764, 768–69 (Iowa 1976). We now do so again. Respondent has not pointed to any words in the statutory or rule provisions that a person of ordinary intelligence would not understand.

His overbreadth challenge is based on claimed intrusiveness of the standards into the area of protected speech. Our cases make it clear that a lawyer's right of free speech does not include the right to violate the statutes and canons proscribing unethical conduct. *See Frerichs*, 238 N.W.2d at 769; *In re Glenn*, 256 Iowa 1233, 1238–39, 130 N.W.2d 672, 675–76 (1964). This view conforms to the view of the United States Supreme Court. *See In re Sawyer*, 360 U.S. 622, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959). It is also consistent with the case cited by respondent. *See In re Hinds*, 90 N.J. 604, 449 A.2d 483 (1982). Indeed, the *Hinds* court upheld the constitutionality of a New Jersey disciplinary rule in the face of a similar attack. *Id.* at 635, 449 A.2d at 496. We find no merit in respondent's constitutional arguments.

We conclude that respondent was guilty of unethical conduct for which discipline is warranted.

III. *Discipline.* Without admitting any wrongdoing, respondent contends that if wrongdoing is found he should receive no greater discipline than a reprimand. He also contends that we should not consider the prior case in which his license was suspended for a minimum period of 60 days for altering a court document. *See Committee on Professional Ethics and Conduct v. Hurd*, 325 N.W.2d 386 (Iowa 1982). The events in the prior case preceded those in this case but the discipline occurred after the events in this one.

■ In determining appropriate discipline, we must consider the attorney's fitness to continue in the practice of law, deterrence of others from similar conduct, and assurance to the public that the courts will maintain the ethics of the profession. *Committee on Professional Ethics and Conduct v. Roberts*, 246 N.W.2d 259, 262 (Iowa 1976). In evaluating the attorney's fitness to continue in the practice of law, we cannot ignore evidence bearing on the attorney's character appearing in prior disciplinary proceedings. *See Committee on Professional Ethics and Conduct v. Kelly*,

357 N.W.2d 315 (Iowa 1984); *Committee on Professional Ethics and Conduct v. Lawler,* 342 N.W.2d 486, 488 (Iowa 1984). Therefore we must consider respondent's prior dishonest act.

We conclude that respondent has demonstrated he will resort to dishonest conduct to achieve what he perceives to be a desirable result for his client. In the process he has engaged in a false attack on the integrity of a judge just as he once tampered with the integrity of a court document. We believe his misconduct requires indefinite suspension of his right to practice law.

We order that respondent's license to practice law in the courts of this state is suspended indefinitely. During the period of suspension he shall refrain from the practice of law as that term is defined in Court Rule 118.12. His license shall not be reinstated for at least six months. An application for reinstatement shall be governed by Court Rule 118.13.

LICENSE SUSPENDED.

All Justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I respectfully dissent from the conclusions and order of the court in the present disciplinary proceeding.

Were it not for what happened thereafter, the majority might be justified in concluding from the remarks respondent made to the county attorney that his reason for filing a motion for change of judge was because he did not enjoy appearing before Judge Cooper. This would not have been a legitimate reason for filing such a motion. By the time the motion was filed, however, I believe that respondent's client could reasonably believe he had cause to ask for a change of judge based upon Judge Cooper's comments as to what sentence he might expect if a plea were not effected.

The grievance commission characterized these remarks by the judge as being highly beneficial information for respondent and his client to have in evaluating their position in the ongoing plea bargaining. While the statements of the judge were doubtless made in good faith with that purpose in mind, I cannot agree that the remarks should have been made. Any suggestion coming from the court that an accused is likely to receive a harsher sentence if he or she stands trial and is found guilty than will be imposed on a negotiated plea runs the risk of suggesting to a lay defendant that his case is being prejudged. This is not to say that a motion for change of judge based on such statements by a judge must in all instances be granted. The court in its discretion could deny the motion. But, the statement was sufficient to justify the filing of the motion if this was the client's wish.

The motion is cast in a form which states that it is the client who questions the judge's impartiality, and the committee has made no affirmative showing that respondent's client did not hold to this view. It is unfortunate that when evidence concerning Mr. Steuk's reaction to the judge's remarks was being offered, counsel for the committee successfully objected to its admission. The record reflects the following in this regard:

Q. Did he [respondent] tell you the judge he was talking to was Judge Cooper? A. Yes.

Q. Did Mr. Hurd come back and talk to you a little bit about the possibility of a plea bargain? A. Yes.

Q. Did he talk to you about what the possible—and, this is a yes or no answer. Did he talk to you about what might happen to you if you went to trial? A. Yes.

Q. What did he say about that? A. Him and Morris and Belson [the county attorney] and Judge Cooper were back in chambers some place and were trying to make a plea arrangement and Morris came back and said that Judge Cooper had told him that if they couldn't come to an agreement that he intended to sentence me to jail.

Q. All right. And do you remember your reaction to that? A. Well, Morris

went on to explain to me that the charge that was against me—

MR. COMITO: Your honor, at this point I'm now going to object as being totally hearsay. It would not go into anything showing the state of mind of Morris Hurd and therefore would be totally hearsay....

PRESIDENT OF THE COMMISSION: I believe the objection is good and I'll sustain it.

While the committee urges that the judge never unequivocally stated that he would sentence the respondent to prison upon conviction, the finding of the grievance committee on this matter was as follows:

During this session, Judge Cooper advised counsel of his view on appropriate punishment for crimes of violence, and indeed specifically stated that if the defendant were found guilty of a crime of violence such as was allegedly involved, then he or any other presiding judge would probably be hard put not to incarcerate him. Judge Cooper may have added that under those circumstances he would put defendant Steuk in jail.

Given the information which respondent understandably and properly conveyed to his client, Mr. Steuk's desire to file a motion for change of judge is understandable regardless of the precise language which the judge employed. Moreover, the timing of the impartation of the judge's remarks to Mr. Steuk by respondent serves to explain why the motion was not filed until the eve of trial. Doubtless, Mr. Steuk had to reflect on the matter somewhat before arriving at a decision.

If respondent was guilty of any wrong in filing the motion for change of judge, it was in embellishing the recitals made in connection with Judge Cooper's remarks to him at the discovery hearing in the *Bruene* case. But those embellishments do not appear to be as consequential as they are made out to be in the majority opinion. The grievance commission found as follows on this subject:

At a hearing involving said estate that took place on March 30, 1981, Judge Richard Cooper brought to respondent's attention the contempt powers of the court. The illusion or illusions by the court to its contempt power, in whatever terms expressed, were not stated until after Judge Cooper had admonished respondent on three occasions to keep to the issues of the hearing. All lawyers are aware that contempt powers include the power to incarcerate. Consequently, whether a reference to incarceration was stated by Judge Cooper or not, it is implicit. It is therefore immaterial whether stated *in haec verba* by the court.

I agree with the commission's finding that there is always a veiled threat of jail whenever the contempt power is threatened. Respondent's characterization of what occurred is therefore not totally lacking in factual basis. It certainly does not rise to "dishonesty" as the court suggests.

Nor are those recitals in the motion as to the *Bruene* matter as completely out of context as the majority suggests. Respondent charged in the motion that the reference to the contempt power occurred while he was pursuing his quest for discovery in the *Bruene* estate matter. The majority says that this is false because the threat to invoke the contempt powers occurred while respondent was improperly arguing the merits of the case during a discovery hearing. Even if the majority is correct, the difference is not of great moment. Certainly, the extent to which the challenged remarks deviate from the true facts are not sufficient to warrant the harsh discipline which is handed out in the majority opinion.

A reading of the record of the portion of the discovery matter in the *Bruene* estate which was reported suggests that respondent's references to the merits of the controversy during the discovery hearing were an effort to give the court the factual background upon which his discovery requests were predicated. In any event, I believe the statements in the motion are employed only to identify the incidents which are claimed to affect the judge's impartiality.

The motion is based on the fact that the altercation occurred without regard to who was at fault in the matter.

I find that the majority opinion is disquieting in two particulars. First, it gives the impression that one who files a motion for change of judge which contains a showing somewhat less than that required to disqualify the court as a matter of law does so at his peril. Surely this should not be the case. Just as the court is given a rather broad discretion in whether to recuse itself in any given matter where the grounds asserted are frictions between the court and counsel, so should counsel be accorded a rather broad discretion in seeking relief on behalf of the client.

Also disquieting is the majority's inference that the filing of such motion impugns the integrity of the judicial process. The present motion is based upon a recital of facts which, if true, do not facially impugn the integrity of the judge. These recitals are simply assertions which have caused respondent's client, respondent or both to question whether the judge would be totally impartial. I believe it is a dangerous precedent to react as harshly to the filing of such a motion as the court does in the present case. This decision will have a chilling effect on attorneys representing their clients with the necessary zeal in those instances where the impartiality of the court may, rightly or wrongly, be legitimately questioned.

Based upon what is shown in the present record, I cannot find that the committee has established by a preponderance of the convincing evidence that respondent should be disciplined for filing the motion for change of judge or for the statements which the motion contained.